# THE BOSTON MARU.
# THE WEST KEATS.

## UNITED STATES v. KOKUSAI KISEN KABUSHIKI KAISHA.

Circuit Court of Appeals, Ninth Circuit. June 27, 1927.

No. 5095.

1. Collision ⬤=69—Only anchorage in navigable channels, preventing or obstructing passage of other vessels, is forbidden (Comp. St. § 9920).

Act March 3, 1899, § 15 (Comp. St. § 9920), making it unlawful to tie up or anchor vessels or other craft in navigable channels in such manner as to prevent or obstruct passage of other vessels, does not prohibit any and all anchorage in navigable channels, but only such as will prevent or obstruct passage of other vessels.

2. Collision ⬤=71 (2)—Pilot held negligent in proceeding down river at full speed until within 1,000 feet of anchored vessel, with anchor lights burning brightly.

Pilot in charge of steamship on navigable stream held guilty of negligence in proceeding down river at full speed until coming within 1,000 feet of anchored vessel, with anchor lights burning brightly and visible for upwards of a mile and a half.

3. Admiralty ⬤=118—Lower court findings, involving largely questions of fact, should not be lightly disregarded, where nearly all testimony was taken in court's presence.

Findings of lower court, involving largely questions of facts, should not be lightly disregarded, where nearly all of testimony was taken in presence of court.

Appeal from the District Court of the United States for the District of Oregon.

Separate libels by the United States against the Japanese steamer Boston Maru, her engines, etc., and by the Kokusai Kisen Kabushiki Kaisha, claimant of the Japanese steamer Boston Maru, her engines, etc., against the United States, as owner of the steamship West Keats; the two libels being consolidated for purpose of trial. From a decree dismissing the libel of the United States and for stipulated damages sustained by the Boston Maru, the United States appeals. Affirmed.

George Neuner, U. S. Atty., and MacCormac Snow, Sp. Counsel U. S. Shipping Board

Emergency Fleet Corporation, both of Portland, Or., for the United States.

McCamant & Thompson and Ralph H. King, all of Portland, Or., for appellee.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. The steamships West Keats and Boston Maru came into collision at a point on the Columbia river opposite Columbia City in the early morning of October 26, 1924. As a result of the collision both vessels were injured. The owner of the West Keats libeled the Boston Maru to recover damages for injuries sustained by the former, and the owner of the Boston Maru filed a libel in personam against the United States, owner of the West Keats, to recover damages for injuries sustained by the latter. The two libels were consolidated for the purposes of trial. On the final hearing the court below found that the West Keats was solely at fault, and a decree was thereupon entered for the stipulated damages sustained by the Boston Maru and dismissing the libel of the United States. From that decree this appeal is prosecuted.

On the afternoon of October 25, the Boston Maru left the Willamette river and proceeded down the Columbia to take on additional cargo at St. Helens, on the Willamette Slough, which branches off the main channel of the Columbia river a short distance above Columbia City. At that season of the year a vessel drawing upwards of 26 feet of water, as did the Boston Maru could not reach St. Helens except at flood tide. The Boston Maru therefore dropped down the main channel of the Columbia to a point abreast of Columbia City and anchored until she could return to St. Helens on the incoming tide a few hours later. She came to anchor at about 8:30 in the evening. The customary anchor lights were then placed in position and the bearings of the vessel were taken by reference to three lights on shore. At that point in the river the 30-foot channel is about 1,250 feet in width, and when brought to anchor the vessel was headed upstream about mid-channel. Later and toward midnight the incoming tide swung the stern toward the Oregon shore and she remained in that position until the time of the collision.

On the same night the West Keats entered the Columbia river from the Willamette about midnight and proceeded down the river at full speed, estimated at from 8 to 10 knots per hour, until within about one minute before the collision. She then attempted to turn

her bow toward the Oregon shore, but by reason of the suction caused by the nearness of the bank, or for some other cause, the vessel refused to respond to her helm, the stern continued to hug the shore and the bow turned toward midstream. As a result, the vessels collided, the hawse pipe about 5 feet back of the bow on the starboard side of the West Keats, striking the starboard quarter aft of the Boston Maru a glancing blow.

[1] Practically the only ground of negligence charged against the Boston Maru was improper anchorage. It is contended that her anchorage violated the Act of March 3, 1899 (30 Stat. 1152) § 15 (Comp. St. § 9920), providing that it shall be unlawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft. It is further contended that the anchorage violated a local custom. But the statute does not prohibit any and all anchorage in navigable channels. It only prohibits such as will prevent or obstruct the passage of other vessels, and the court below found that the anchorage in question did not fall within that prohibition. The court likewise found that there was no established anchorage ground at that place, and this finding would seem to cover an anchorage ground established by custom as well as an anchorage ground established by law. While there was testimony tending to show that a number of pilots anchored their vessels lower down the river and over near the Washington shore, there was also testimony to the contrary, and we agree with the court below that the testimony failed to establish any such certain and uniform custom as would justify the pilot in charge of the West Keats in proceeding down the river at full speed under the assumption that anchor lights directly in front of him were over near the Washington coast, leaving several hundred feet of open river before him on the Oregon side.

When the vessel was placed at anchor it was impossible to tell which way she would swing, if moved by the wind or tide. She was anchored perhaps nearer to the Washington than to the Oregon side of the deep water channel, and as near to the Washington shore as was deemed safe in view of the presence of a gravel bar in the river at that point. From her position it would not seem that she would obstruct the passage of other vessels whichever way she might swing, and we are by no means satisfied that she did swing far enough to obstruct or impede such passage. The testimony is somewhat uncertain as to the distance between the stern of the Boston Maru and the Oregon shore, as darkness and the shadow of the bank obscured the vision; but the testimony tends to show that the incoming tide would move the Boston Maru forward on her anchor chain until her bow was substantially above the anchor and that the vessel would then swing slowly on a radius little greater than her length. If such was the movement here, there was left upwards of 600 feet of deep water on the Washington side, and at least 200 feet of deep water on the Oregon side. This would seem ample to permit of the safe passage of the West Keats at either side if navigated at a moderate rate of speed and with due care. The testimony further shows that she would in all probability have passed in entire safety if she had responded to the movement of her helm, and that the suction from the bank was the cause of such failure. An experienced navigator should have anticipated this.

[2] On the whole therefore we are of opinion that the court below was amply justified in finding that the pilot in charge of the West Keats was guilty of negligence in proceeding down the river at full speed, until he came within 1,000 feet of an anchored vessel directly in his path, with anchor lights burning brightly and visible for upwards of a mile and a half. Indeed it would be difficult to reach any other conclusion.

[3] We are likewise of opinion that the finding that such negligence was the sole cause of the collision should not be disturbed. The applicable rules of navigation are well understood, and the questions involved are largely questions of fact. Nearly all of the testimony was taken in the presence of the court below and its findings should not be lightly disregarded.

We find that the decree is supported by the findings and the findings are supported by the testimony.

The decree is therefore affirmed.