## LUDWIG v. UNITED STATES.
### No. 14891.

District Court, W. D. Washington, N. D.
Aug. 13, 1946.

Levinson & Friedman, of Seattle, Wash. (Sam L. Levinson, of Seattle, Wash., of counsel), for libelant.

J. Charles Dennis, U. S. Atty., and Bogle, Bogle & Gates, all of Seattle, Wash. (Edw. S. Franklin, of Seattle, Wash., of counsel), for respondent.

BOWEN, District Judge.

On the question of liability, it is the finding, conclusion and decision of the Court that the oil drums in question were negligently stowed by respondent on the deck of this vessel in that they were improperly and unseaworthily secured by the unsuitable kind of rope that was used, and in that respondent further negligently failed to use a proper, safe, careful and seaworthy method of securely tying these drums down with steel wire rope or chains fastened to the deck or hatch coaming in

a way that would have reasonably provided against alternate slacking and tightening of the tying-down means. Thereby, if such safer means had been used, the injury sustained by libelant in this case might reasonably have been avoided. Such negligence was a proximate cause of libelant's injuries.

The situation here is different from that occurring in some of the cases where there was no negligence present except that which was involved in an alleged failure to foresee the onrush of a sea wave or the force of heavy seas coming aboard. In some of those cases that was the only negligence aspect of the case. Here we have not only heavy seas and the impact of a heavy wave coming aboard but we also have this negligent stowage condition which in proximate effect continues up until the time when the heavy seas came aboard. That negligent stowage condition never did cease to exist, and I do not believe—notwithstanding the testimony of at least one witness who said this was a freak wave—that an ordinary, careful navigator would have been taken unawares on a voyage in these waters from Houston to Sydney respecting the kind of wave that came onto those decks that day when the libelant was necessarily carrying out the orders of a superior in trying to reattach and overcome the continuing negligent condition that these drums had been put in by the oversight and improper stowage of the ship owner and respondent in this case.

I do not believe the wave which came onto the main deck when libelant was hurt was a freak wave. There was testimony that on one or two previous occasions a wave 20 or 23 feet high had come onto not only the main but the boat deck. Libelant testified that before he got hurt it had been necessary to unship the number 4 lifeboat which was about on a level with the boat deck, and to pour out of it the water which had accumulated in it from heavy seas smashing into it. So it seems previously there had been some heavy seas worse than or comparable to this one. While I do not place liability upon foreseeability of that heavy sea that came aboard here at the particular time when libelant was injured,

yet I do not feel that the evidence as to its being an unusual and freak wave, so as to have been an Act of God instead of a foreseeable condition of navigation, was such as to entitle respondent to exemption from liability on that ground.

I am not so strongly impressed with the charge of negligent navigation of the ship. I think that the ship was proceeding on a substantially approved course and in substantially a seamanlike manner with respect to such conditions or navigation as then confronted the navigator of that ship. The principal negligence in the Court's opinion is that charged with respect to the improper method of stowing on deck these oil drums weighing about 500 pounds each.

The theory of the Court's finding that the ship owner is liable is essentially based upon the continuing negligence of the ship owner in respect to the improper stowage of the drums on deck under the circumstances previously stated by the Court.

That brings the Court to the question of the amount of the award necessary to reasonably compensate the libelant for his injuries and damages. It is true, in my opinion, as some of the testimony in the case indicates, that the period of recovery here has been longer than that experienced on the average in similar cases, especially considering the youth of the libelant. I think some of that period is accounted for by the surgical necessity of twice breaking and resetting the bones when he was in Australia.

I am not convinced by the proof that he could have employment indefinitely in the future at a standard of income or wage as gainful and profitable as he had during the time that he was working. I do have in mind that he for about three weeks did not have as good surgical care as he had after that time up to the present but I do not believe that the ship was negligent respecting proper surgical care. I think the ship's conduct in that respect was within the proper standards set for steamship operators. Ships of that type, in time of war, in order to make the ship seaworthy or in order to exercise due care toward some injured seaman, were not required to have on board a doctor licensed to practice

medicine, in my opinion. Nor do I think the ship owner was negligent in not breaking the radio silence and requesting a doctor's advice against orders not to do so at that most critical time of the Japanese War. In that connection, we now know, but we then did not, that many of these war secrecy precautions were unnecessary because the Japanese military machine was not actually in a position to take advantage of information that it might have gotten in every case. But that is information which we have obtained since the capitulation of the Japanese, not before.

The Court, considering all of the elements of damage, the earning capacity of the libelant, the length of time required for recovery, the relatively successful recovery, the pain and suffering experienced by him and all of the other elements of damage disclosed by the evidence and by the Court's understanding of it, finds, concludes and decides that the sum of $4250 will reasonably compensate the libelant for his injuries and damages sued for herein, including general damages and loss of earnings and other special damages to which he is entitled.

The Court finds, concludes and decides that the libelant is entitled also to his taxable costs in this action.