## MENEFEE v. W. R. CHAMBERLIN CO.
### No. 12124.

United States Court of Appeals
Ninth Circuit.
June 23, 1949.

FEE, District Judge, dissenting.

———◆———

J. Duane Vance, Bassett & Geisness, Seattle, Wash., for appellant.

Bogle, Bogle & Gates, Edw. S. Franklin, Seattle, Wash., for appellee.

Before DENMAN, Chief Judge, BONE, Circuit Judge, and FEE, District Judge.

DENMAN, Chief Judge:

This is an appeal from a decree in admiralty dismissing appellant's libel for recovery (a) for certain moneys claimed to have been unlawfully withheld from the seaman's wages when due him for subsistence; and (b) for damages to him for injury sustained by him, a seaman on the S. S. Robert Parrott on January 22, 1947, during a winter voyage in the North Pacific Ocean while the steamer was en route from Olympia, Washington, to Yokohoma, Japan, claimed to be caused by appellee's negligence in compelling him to work in an unsafe place on the vessel.

(a) The evidence supports the finding of the decree that appellee did not withhold the claimed moneys, and we affirm the dismissal of the decree respecting that issue.

■ There is no evidence to support the court's finding of absence of negligence in the appellee, but, on the contrary, all the evidence sustains the appellant's contention of appellee's negligence. The decision with respect to that negligence is clearly erroneous. As stated in Langnes v. Green, 282 U.S. 531, 537, 51 S.Ct. 243, 245, 75 L.Ed. 520, citing Watts, Watts & Co. v. Unione Austriaca, di Navigazione, 248 U.S. 9, 21, 39 S.Ct. 1, 63 L.Ed. 100, 3 A.L.R. 323, "This court, in the exercise of its appellate jurisdiction, has power not only to correct error in the judgment entered below, but to make such disposition of the case as justice *may at this time* require;" and "the rule is the more insistent, because in admiralty cases are tried de novo on appeal." Rice Growers Ass'n of Cal. v. Rederiaktiebolaget Frode, 9 Cir., 171 F.2d 662, 663. Cf. Petterson Lighterage & Towing Corp. v. New York Central R. Co., 2 Cir., 126 F.2d 992.

■ (b) *The injury to appellant was caused by the negligence of the steamer's officers in leaving lashed forward of her fantail for over three weeks after sailing her manila hawser, likely to be broken from her lashings and washed over by anticipated heavy winter seas and to foul her propeller, instead of safely stowing it on departure, which negligence required appellant to assist in removing it when anticipated increasing heavy seas made the*

*risk to the propeller immediately imminent,
to his consequent injury.*

What constitutes maintaining conditions of safety for seamen on any voyage, and particularly on a winter voyage in the North Pacific, is peculiarly in the knowledge of the ship's officers. The performance of the obligation to create such safety is theirs. This is not 1849, when captains and courts felt that sailors must face any exposure and keelhauling and thumb tricing enforced obedience.

How the ship's officers failed in this obligation appears in the deposition of the first mate, Kloppenstein, a witness offered by the owner. His pertinent statements are supported by all the appellant's witnesses. They are contradicted by none.

When the steamer left Olympia, the large 8-inch manila mooring line, 250 feet long, which had been used at that port, was rolled up and lashed to a rail on the aft starboard side of the after deckhouse. The first mate states this was the practice "in good weather temporarily." It was usually stowed in the locker in the steering engine room. On this voyage there were 200 miles of the inland waters of Puget Sound in which this stowage could have been made. Apparently it could have been done with safety in the first ten days, after the first of January, of the winter voyage on the North Pacific.

That was a voyage, the owner's first mate testified, on which it was expected that "green waters" would cross the decks. Recognizing the danger of fouling the propeller from a washing over astern of the hawser, the first mate, some days before the injuries to appellant, ordered the boatswain to fit an eye in the hawser and place it in its usual place of stowage in the towing engine room locker.

It is obvious that if a sea was expected on deck so heavy that it would break the lashings holding the large hawser and carry it back to endanger fouling the propeller, it was anticipated to be heavy enough to wash overboard a seaman, or to beat him against the ship's structure, causing such injuries as those to appellant and also injuries to the mate and another seaman.

The boatswain put the eye in the hawser but disobeyed the mate's order to remove it to the engine room locker, and it remained exposed to the seas. Of this disobedience, the first mate testifies of the subsequent injuries of the appellant and others:

Question: "If the Boatswain had done what you told him, this probably would not have happened?" Answer: "I told him to put it in the midship deckhouse, and this probably would not—"

Question: "Have arisen?" Answer: "Yes, but he did not do it."

Question: "When did the Boatswain get the eye complete in that hawser, do you know?" Answer: "I don't recall, but it was before the water started washing the decks."

On January 22, several days after the boatswain disobeyed the first mate's order, the expected "green" water began to wash the decks, and the seas were so heavy the captain ordered the ship's engines slowed. What then happened, the first mate testifies, is:

Question: "Now, on or about January 22nd, were you ordered by the Captain to remove some gear from the deck of the vessel?" Answer: "Yes."

Question: "And what were your orders from the Captain?" Answer: "To move a mooring line that was stowed aft on the gratings and lashed to the deckhouse—move it into the deck-house."

Question: "I see. And, so you know the reason for that—moving it from where it was lashed into the deckhouse?" Answer: "The reason was, if the line became adrift, it might get into the screw and disable the vessel."

What subsequently happened, causing the injuries to the appellant, which the evidence shows were of a serious character, and to others by the sea driving them against the deck house, is described by the first mate as follows:

Question: "What did you do then next, after you and the Captain had inspected—

made inspection of the aft end?" Answer: "Then we returned to the midship house and I called out the watch to come back aft and put the line in the deckhouse."

Question: "Will you tell what happened after that, Mr. Kloppenstein?" Answer: "Well, I brought—I took the men aft and stationed them at intervals to handle the line as quickly as possible, and opened the port passageway door and started to cut the *lashings*. I had cut *one* through and had started to cut the *second* one and there was a tremendous sea—a *series* of tremendous seas at that particular time—it started the vessel pitching heavily and the Captain had already slowed the vessel down after we went aft—and it didn't seem to be dangerous at that time, but suddenly, this *one* of *these* heavy seas came up—the vessel seemed to back squarely into the sea—it stopped—it actually didn't, but it seemed that way. Water came over from both sides and the stern, and washed everyone forward against the deckhouse."

· Question: "Now, after the sea came over —was that only one sea?" Answer: "Only one sea." ·

Question: "There were no others after that?" Answer: "Oh, there were *several* seas after that." (Emphasis supplied.)

Here was no tidal wave or a sudden "freak" sea, but a "series" of heavy seas such as the Captain expected would tear the hawser from the lashings the mate was attempting to cut when his head was injured. They were strong enough to hurt the men but not enough to free the hawser from its remaining lashing. Of this and the injuries to himself and the men, he testified:

Question: "Where did you meet the Captain?" Answer: "At the foot of the ladder in the midship house."

Question: "What transpired after that?" Answer: "He told me not to go aft, as I had a bad cut on my own head, and I told him I would go back and make certain no one go back on deck."

Question: "Did you go back to the deckhouse?" Answer: "Yes, I went back the second time."

Question: "Did you complete the operation of cutting the mooring line—unlashing it?" Answer: *"No, when I left, the mooring line was still lashed and the crew was still in the deckhouse."*

\* \* \* \* \* \*

Question: "Did you make inquiry of the crew that was in the deckhouse as to whether any were injured?" Answer: "Yes, that's the first thing I asked."

Question: "Did you get any reply?" Answer: "There was an ordinary seaman by the name of Jacobsen, he said he had a cut on the head, and Menefee said, he was hurt—his leg—or twisted his leg—I don't recall his exact words." (Emphasis supplied.)

This delay of 22 days to stow the hawser is clearly negligent management of the vessel's equipment. The negligence continued and was existing when appellant was injured. If not *the* proximate cause, the captain's and mate's delay until it was necessary to expose appellant to such an expected hazard was *a* proximate cause of his injury within the Jones Act provision 45 U.S.C.A. § 51 that:

"Every common carrier \* \* \* shall be liable in damages to any person suffering injury \* \* \* *resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier* \* \* \*." (Emphasis supplied.)

Cf. United States v. Boykin, 5 Cir., 49 F.2d 762, where the negligence of the owner caused injury to the seaman in a storm described as a "hurricane"; Matson Nav. Co. v. Hansen, 9 Cir., 132 F.2d 487; Brislin v. United States, 4 Cir., 165 F.2d 296; Ludwig v. United States, D.C., 74 F.Supp. 29.

The decree is reversed on the issue of the claimed negligent injury to appellant and the cause remanded for a determination of the amount of appellant's damages, and a decree ordered entered awarding that amount.

JAMES ALGER FEE, District Judge (dissenting).

The decision of the Trial Judge based upon fact findings should be affirmed.

The Trial Judge found this seaman sustained injury solely as a result of the force of a wave. Thereupon, it was concluded the injury resulted from a peril of the sea, which the seaman had assumed, and not as a result of any negligence of respondent, directly or of the officers, agents or employees of the carrier. The monumental opinion of Judge Learned Hand in Petterson Lighterage & Towing Corporation v. New York Central Railway Co., 2 Cir., 126 F.2d 992, establishes the doctrine that a finding of fact in admiralty is a finality unless "clearly erroneous." It is difficult to comprehend how anyone would thereafter contend that a trial de novo on appeal in admiralty is a reality, or that the appellate courts have power to find facts. The close set foundations of that opinion, composed of crystalizations of traditional practice and the bulk of an explicit Rule,[1] renders it a landmark unshatterable by winds of doctrine. This principle so announced is applied in personal injury actions.[2] Judge Denman quotes and explicitly follows the corresponding Civil Rule [3] when writing for this Court in Matson Navigation Co. v. Hansen, 9 Cir., 132 F.2d 487, in an action under the Jones Act, 46 U.S.C.A. § 688.

The Rule makes no reference to the manner in which the evidence is presented to the Trial Court, whether by deposition or orally. Certainly the Rule should be followed here where the Trial Judge heard libelant and the two witnesses who testified in his behalf. There was one deposition concerning the accident introduced by respondent. The findings are thus heavily reinforced.[4] The few opinions which attempt to avoid the force of Judge Hand's decision quoted above do so by some mention of the fact that deposition evidence is involved.

No doubt this Court has the right to conclude the findings of the Trial Court, that the accident was caused by a peril of the sea alone, were "clearly erroneous." But

---

[1] Admiralty Rule 46½, ff 28 U.S.C.A.

[2] The recent cases involving personal injury in this Court, where the findings of the Trial Court are affirmed under the Rule, are: The Rocona v. Guy F. Atkinson Co., 9 Cir., 173 F.2d 661; Heder v. United States, 9 Cir., 167 F.2d 899; Meintsma v. United States, 9 Cir., 164 F.2d 976; Bornhurst v. United States, 9 Cir., 164 F.2d 789; Stetson v. United States, 9 Cir., 155 F.2d 359; Drain v. Shipowners & Merchants Towboat Co., 9 Cir., 149 F.2d 845.

Judge Denman's opinion in Matson Navigation Co. v. Hansen, 9 Cir., 132 F.2d 487, involves the Civil Rule, but is to like effect.

Other cases in this Court, where the doctrine was applied both before and after the effective date of Rule 46½, are: Stockton Sand & Crushed Rock Co. v. Bundensen, 9 Cir., 148 F.2d 159; Luckenbach Steamship Co. v. Societa Anonima, 9 Cir., 127 F.2d 86; Puratich v. United States, 9 Cir., 126 F.2d 914; Crowley Launch & Tugboat Co. v. Wilmington Transportation Co., 9 Cir., 117 F.2d 651; The Heranger, 9 Cir., 101 F.2d 953; Calanchini v. Bliss, 9 Cir., 88 F.2d 82; The Shangho, 9 Cir., 88 F.2d 42; Lillig v. Union Sulphur Co., 9 Cir., 87 F.2d 277; The Golden Star, 9 Cir., 82 F.2d 687; The Andrea F. Luckenbach, 9 Cir., 78 F.2d 827, 828; Lortie v. American Hawaiian Steamship Co., 9 Cir., 78 F.2d 819, 820; Wandtke v. Anderson, 9 Cir., 74 F.2d 381, 384; The Bergen, 9 Cir., 64 F.2d 877, 880; The Mabel, 9 Cir., 61 F.2d 537, 540; The Hermosa, 9 Cir., 57 F.2d 20, 24; Panama Mail Steamship Co. v. Vargas, 9 Cir., 33 F.2d 894; The Boston Maru, 9 Cir., 20 F.2d 508, 509; Luckenbach Steamship Co. v. Campbell, 9 Cir., 8 F.2d 223, 224.

[3] Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A.: "Findings * * * shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

[4] "All but one of the witnesses to the accident and conditions prevailing, including the chief mate under whose orders Hansen was working at the time of the injury, testified before the district court. The sufficiency of the findings is to be considered here with reference to the provision of Rule 52 of the Federal Rules of Civil Procedure * * * *." Matson Navigation Co. v. Hansen, 9 Cir., 132 F.2d 487, 488 (emphasis supplied).

In a case on trial de novo before the adoption of the Rule, this Court said affirming the Trial Judge: "The witnesses heard and seen by the judge were *disbelieved* by him and the witness who testified by *deposition* told a straightforward story." Lillig v. Union Sulphur Co., 9 Cir., 87 F.2d 277, 278 (emphasis supplied).

the evidence was conflicting. Some of the excerpts quoted in the majority opinion are self contradictory. The Trial Judge had the right, as trier of the fact and of the credibility of the witnesses whom he heard, to disbelieve them or any one of them because of "the manner in which he testified, the character of his testimony" or because of contradictory testimony. Findings must be given great weight, since these are supported by substantial evidence even upon the cold record.[5]

Indeed, if this court had power to decide the facts on the evidence, the writer would agree with the Trial Judge. An opinion sustaining his findings could be written which would be much better founded on the record. But this is not within our competence. It is difficult to understand how the findings can be held "clearly erroneous" when one Judge in the Trial Court and one Judge on appeal agree these are correct and well founded.[6]

Resolution of such cases should not be by divided courts if the analogy of other negligence cases be followed. If we may adopt a phrase, a divided appellate court should not set aside findings of a Trial Judge in negligence cases "where the facts are in dispute, and the evidence in relation to them is that from which fair-minded men may draw different inferences." Washington & G. R. Co. v. McDade, 135 U.S. 554, 572, 10 S.Ct. 1044, 1049, 34 L.Ed. 235, quoted in Wilkerson v. McCarthy, 336 U.S. 53, 62, 69 S.Ct. 413.

"If there were a bright line dividing negligence from nonnegligence, there would be no problem." Mr. Justice Frankfurter, concurring in Wilkerson v. McCarthy, supra, 336 U.S. 65, 69 S.Ct. 419.

"The basis of liability under the Act is and remains negligence. Judges will not always agree as to what facts are necessary to establish negligence." Mr. Justice Douglas, concurring in Wilkerson v. McCarthy, supra, 336 U.S. 69, 69 S.Ct. 421.

The intolerable burden upon the Appellate Courts is caused in major part by failure to carry out the rule as written and in the attempt to find an emotionally satisfying result by a decision on the "clear weight of the evidence" or the "undisputed evidentiary facts" or similar abracadabra where questions of credibility and bias enter.[7]

The Trial Court did not find that any act or omission of any "of the officers, agents, or employees" of the carrier resulted in the injury of the seaman. That Court found no fact upon which a fact inference or fact finding of contributing cause of respondent could be based.

This situation presents a square corner. There is not authorization by Rule or Custom for Appellate Judges to find other facts not found by the Trial Judge. The majority must here go much further than to set aside the findings of the Trial Court as "clearly erroneous" in order to sustain the determination here that the accident was the result of negligence of respondent and remand for a finding of damages alone. The majority must make new and different findings of fact to the effect (1) that a hawser was left securely fastened upon deck from the time of the commencement

---

[5] The majority relies on the deposition of one of the officers who was injured in the same accident. There are two criticisms of this. First, the majority has substituted the judgment of the officer for their own. Second, the officer was injured and therefore had a potential claim himself against the appellee. No weight is given to this circumstance by the majority, although credibility is in issue.

[6] The whole situation is highlighted by the fact that the experienced Trial Judge, in a case which can be claimed parallel on the facts on the record, found the exact contrary and allowed recovery. Ludwig v. United States, D.C., 74 F.Supp. 29. Paradoxically, appellant cites this opinion by the same Judge to show that the same "facts" outlined must uniformly be interpreted mechanistically to arrive at a similar result.

[7] Contrary to the assumption by the majority, the Trial Judge did not find absence of negligence by appellee as a fact, but concluded there was absence of negligence based upon a direct and positive finding that the sole proximate cause of injury was a peril of the sea.

of the voyage until the accident,[8] (2) that there was opportunity to have threaded the eye and to have moved the hawser before the day in question, (3) that the conditions of wind and weather and all surrounding circumstances were such that a reasonable and prudent person would not have left the hawser although securely fastened in that position during that length of time, (4) that a reasonably prudent person would not have ordered the appellant to move the hawser at that particular time and place under all the surrounding circumstances, (5) that the removal of the hawser at the time and place was a cause and not merely a condition of the accident,[9] (6) that the action or inaction of any servant of the carrier was a contributing cause of the injury.

It is clear that, in order to support liability of respondent, primary facts including proximate or contributing cause must be found. A finding of cause, proximate or contributory, is a finding of fact. Such a finding cannot be pronounced a conclusion of law. But the addition of any new finding destroys the unity of those made by the Trial Judge,[10] based upon the evidence and the additional imponderables of credibility of witnesses whom he saw. Especially is this the case where the "facts" found are squarely in conflict with his findings. If it is possible for this Court to make primary findings of facts as to condition of wind and sea, time and causation, there is no reason why the damages should not be assessed here upon the evidence,

which also can be claimed to be uncontradicted. No remand would then be necessary. But the finding of facts relating to causation or damage is beyond the competency of the Appellate Court, where the Trial Judge has heard a material witness.[11]

It is sometimes said the Appellate Court can draw the conclusion of liability from the "facts," even where the Trial Court has not reached that result. If this postulate be granted, the conclusion must be drawn from the facts found by the Trial Court. If sufficient facts are not found, there must be remand for that purpose.

The drawing of the conclusion of liability of the respondent upon the Trial Judge's finding that the sole cause of the accident was the unexpected breaking of a wave over the ship would constitute respondent an insurer against the perils of the sea, which the seaman had assumed. The liability would thus be imposed as a rule of law, and not based on a finding of contributing cause. In Mahnich v. Southern Steamship Co., 321 U.S. 96, 98, 99, 64 S. Ct. 455, 457, 88 L.Ed. 561, it is said: "A finding of seaworthiness is usually a finding of fact. * * * Here, however, both courts below, holding themselves bound by The Pinar Del Rio, supra [Plamals v. The Pinar Del Rio, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827], have, *on the facts found, held as a matter of law* that the staging was seaworthy despite its defect." A reversal followed because the correct rule of law was not adhered to by the lower courts.

---

[8] On the oral argument here, proctor for libelant definitely stated he made no claim of unseaworthiness because of the manner of storage of the hawser or the fact that it was left on the fantail during the first part of the voyage.

[9] In a similar case sustaining the finding of a Trial Court, it is said: "If the beams, properly stowed, so had been disarranged by a storm, it would have been nonetheless negligence to require the appellee to walk over them in the conditions found by the court." Matson Navigation Co. v. Hansen, 9 Cir., 132 F.2d 487, 489.

[10] See discussion by Judge Hand in Petterson Lighterage & Towing Corporation v. New York Central Railway Co., supra, 126 F.2d 995–996: "That part

which strictly should impose upon us the duty of deciding upon the record, although the district judge has made no findings, we overruled in Matton Oil Transfer Corp. v. The Dynamic, 2 Cir., 123 F.2d 999. * * * findings are not findings when they rest upon only a part of the evidence, * * *."

[11] The masterful exposition of the power of a Trial Judge who has heard one witness, given in Broadcast Music, Inc., v. Havana Madrid Restaurant Corp., 2 Cir., 175 F.2d 77, discredits Stokes v. United States, 2 Cir., 144 F.2d 82, where the Rule as to the weight of findings of a Trial Judge, who had libelant before him as a witness, was apparently disregarded by the same Appellate Judge.

But the Supreme Court of the United States, in construing the same statute applied to carrier cases upon land, has reiterated the doctrine that such liability depends on question of fact and cannot be abrogated or imposed by a rule of law.

"Much of respondents' argument here is devoted to the proposition that the Federal Act does not make the railroad an absolute insurer against personal injury damages suffered by its employees. That proposition is correct, since the Act imposes liability only for negligent injuries." Wilkerson v. McCarthy, supra, 336 U.S. 61, 69 S.Ct. 417.

The majority cannot find new facts not found by the Trial Court. The record supports the findings of fact made by the Trial Court. These findings free the respondent from liability. But if the majority conclude that these findings are "clearly erroneous," they must remand for new findings.[12] The majority cannot impose liability for an accident resulting from a peril of the sea and without actual fault. The Trial Court should be affirmed.

But if the majority determine the cause must be remanded for new findings as to damage, it is suggested that, since the Trial Judge and the writer view the facts one way and two other Appellate Judges view the facts otherwise, remand be made for trial of all issues of fact by an advisory jury, since the cause arises under the Jones Act and it is only by a procedural quirk that it was tried originally by a judge instead of a jury.

"The issue of negligence is one for juries to determine according to their finding of whether an employer's conduct measures up to what a reasonable and prudent person would have done under the same circumstances. And a jury should hold a master 'liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances,' bearing in mind that 'the standard of care must be commensurate to the dangers of the business.'" Wilkerson v. McCarthy, supra, 336 U.S. 61, 69 S.Ct. 417.

---

[12] Guerrini v. United States, 2 Cir., 167 F.2d 352, 356.