James H. VALLOT, Plaintiff-Appellant,

v.

CENTRAL GULF LINES, INC., and S. S. GREEN FOREST, In Rem, Defendants-Appellees.

No. 78–3835
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

April 3, 1981.

348

John P. Keegan, New Orleans, La., for plaintiff-appellant.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Glenn G. Goodier, New Orleans, La., for defendants-appellees.

Before BROWN, POLITZ and TATE, Circuit Judges.

### PER CURIAM:

Plaintiff, James Vallot, appeals jury verdict in favor of his employer, Central Gulf Lines, Inc., and its vessel, the *S. S. Green Forest*, in action brought under the Jones Act for negligence and under general maritime law for unseaworthiness. He argues on appeal District Court erred in (i) denying his motion for new trial because there is no evidence to support the jury's verdict the vessel was seaworthy and the shipowner not negligent, and excluding evidence of (ii) his expert medical witness, (iii) certain tape recordings, and (iv) two volumes of the Federal Register concerning OSHA regulations. Finding all his contentions without merit, we affirm.

### The Facts

Vallot was employed by Central Gulf as a bosun on its vessel the *S. S. Green Forest.*[1] As part of his duties, Vallot prepared paint and solvents in the ship's paint locker, as well as set up scaffolding for painting various parts and items on the ship. While the vessel was at anchor in Chittagong, Bangladesh, Vallot was attacked without provocation by another crewmember wielding a fire ax. At no time was Vallot struck or in any way visibly touched by the crewmember or the hatchet. Shortly after the attack, Vallot noticed a discoloration of his urine. The next day, Vallot discovered blood clots in his mouth, dark spots on all extremities of his body, and that he was urinating blood. Being taken off the vessel and examined by a Chittagong doctor, Vallot was diagnosed as having contracted thrombocytopenia purpura, a blood disease affecting the platelets.[2] He was treated in a Chittagong clinic for fifteen days before being transferred to the U. S. Public Health Service Hospital in New Orleans where he was hospitalized for two and one-half months.

To recover for loss of wages, permanent disability, medical expenses, pain, and suffering, Vallot brought this action against Central Gulf, in personam, and the *S. S. Green Forest*, in rem, for negligence and unseaworthiness in causing his illness because he (i) had to work in a paint locker inhaling toxic fumes, and (ii) was attacked violently by one of the other crewmembers. After presentation of the evidence at trial, however, the jury returned a verdict in favor of Central Gulf and the *Green Forest*. Alleging an absolute absence of evidence in the record to support the jury's verdict, Vallot moved for a new trial as a matter of law. District Court overruled, however, concluding ample evidence was presented to warrant the jury finding that neither the sniffing of paint fumes on board the vessel nor the hatchet attack could have contributed to the onset of Vallot's disease or rendered the ship unseaworthy.

### Motion For New Trial

Vallot first contends District Court erred in denying him a new trial because there is no evidence to support the jury's verdict the vessel was seaworthy and the shipowner was not negligent. On review of a denial of a motion for new trial, the function of this Court is to review whether the trial judge abused his discretion in denying the motion or whether "as a matter of law the denial of a new trial was erroneous because there was an 'absolute absence of evidence to support the jury's verdict.'" *Urti v. Transport Commercial Corp.*, 479 F.2d 766, 769 (5th Cir. 1973), *quoting Indamer Corp. v. Crandon*, 217 F.2d 391, 393 (5th Cir. 1954); *accord Bailey v. Southern Pacific Transportation Co.*, 613 F.2d 1385, 1391 (5th Cir. 1980). The standard for testing sufficiency of evidence in this Jones Act case is whether there is a

---

1. *The S. S. Green Forest* was an American flag vessel certified by the American Bureau of Shipping and the United States Coast Guard for carrying bulk cargo.

2. Platelets may be simply referred to as the glue that holds the white and red blood cells together and prevents bleeding.

reasonable evidentiary basis for the jury's verdict. *Campbell v. Seacoast Products, Inc.*, 581 F.2d 98, 99 (5th Cir. 1978).[3]

In deciding whether there is a reasonable basis for the jury's finding, we must keep in mind the special warranty of seaworthiness a ship owner owes to his crew. 2 M. NORRIS, THE LAW OF SEAMEN § 613, at 168 (3d ed. 1970). This warranty extends to unseaworthiness caused by a "defective" crew as readily as it does to defective equipment or a leaky ship. *Clevenger v. Star Fish & Oyster Co.*, 325 F.2d 397, 400 (5th Cir. 1963). "A seaman with a proclivity for assaulting people may, indeed, be a more deadly risk than a rope with a weak strand or a hull with a latent defect." *Boudoin v. Lykes Bros. S. S. Co.*, 348 U.S. 336, 339–40, 75 S.Ct. 382, 385, 99 L.Ed. 354, 358–59 (1955). The test for determining if a seaman is dangerous is one who is not equal in disposition to an ordinary seaman, and whose presence makes the vessel unseaworthy as a matter of law. *Claborn v. Star Fish & Oyster Co., Inc.*, 578 F.2d 983, 985 (5th Cir. 1978), *cert. denied*, 440 U.S. 936, 99 S.Ct. 1281, 59 L.Ed.2d 494 (1979).

The burden of proving proximate cause in actions based on general maritime law and the Jones Act is very light and on the plaintiff. *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 331 (5th Cir. 1977). In the instant case, however, Vallot failed to meet even this light burden his illness was caused either by the attack or by the allegedly toxic fumes present in the paint locker. The doctor who studied Vallot's record while hospitalized in the U. S. Public Health Service Hospital testified Vallot's illness developed over a period of time and was not a type which would have been caused by fear or the emotional upset of someone attacking him with a hatchet. Moreover, the doctor opined the type of thrombocytopenia Vallot had contracted could not be acquired by sniffing paint fumes, but instead was probably caused by a virus or a drug such as aspirin.

Even ignoring the medical possibilities, Vallot failed to prove any unseaworthiness or negligence related to his condition. The paint locker aboard the *Green Forest* was approved as such by the United States Coast Guard. Both the United States Coast Guard and the American Bureau of Shipping inspected the vessel several times each year, including the paint locker, and found it to be proper and in compliance with all rules and regulations. Further, all paints and solvents used on board the *Green Forest* had to be certified by the Coast Guard and were in compliance with their rules and regulations.

*Exclusion of Evidence*

As a second assignment of error, Vallot argues District Court erred in excluding the testimony of his expert medical witness. It is well settled, however, a trial judge has broad discretion in admitting or excluding evidence, and his action is to be sustained unless manifestly erroneous. *Salem v. U. S. Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313, 317 (1962); *Perkins v. Volkswagon of America, Inc.*, 596 F.2d 681, 682 (5th Cir. 1979). *See also Scheib v. Williams-McWilliams Co.*, 628 F.2d 509, 511 (5th Cir. 1980).

On voir dire outside the jury's presence, Vallot's expert testified he (i) formed an opinion based on facts supplied to him by Vallot's attorney before examining Vallot, (ii) felt he was employed to find a causal connection between the attack and Vallot's illness, (iii) gave Vallot a legal psychiatric examination and did not see him in a doctor/patient relationship, (iv) viewed himself as a consultant to Vallot's counsel, and not as a psychiatrist looking after Vallot, (v) was concerned with attempting to develop negligence on Central Gulf's part that could be causally connected to Vallot's claim, and (vi) conceptualized his job was to quantify the amount of damages Vallot sustained.

---

3. Since Vallot made no motion for directed verdict at the close of the evidence, this Court need not review sufficiency in its technical sense. *See Scheib v. Williams-McWilliams Co., Inc.*, 628 F.2d 509, 512 (5th Cir. 1980).

In light of such admissions, we cannot conclude District Court erred in refusing to permit Vallot's psychiatrist from testifying. No manifest error existed.

 Vallot's third complaint is District Court erred in refusing to allow admission of a tape recording in which the seaman who allegedly attacked him with an ax, pleaded guilty to assault charges. The tape recording, however, clearly was hearsay inadmissible under Fed.R.Evid. 802. Nor did it properly fit into any of the exceptions in Fed.R.Evid. 803. It was not established the declarant in the tape recording was unavailable to testify. Where there was no opportunity for cross-examination, any probative value of the evidence was substantially outweighed by the danger of prejudice or misleading the jury. Fed.R.Evid. 803. We cannot find District Court abused its discretion in not allowing the jury to hear the tape. *See Wright v. Hartford Accident & Idemnity Co.*, 580 F.2d 809, 810 (5th Cir. 1978).

 Vallot's final contention is District Court should have taken judicial notice of information in two volumes of the Federal Register concerning OSHA regulations. He argues the regulations link certain chemicals to his disease. We find these assertions without merit.

Vallot did not demonstrate that the information in the Federal Register was relevant. Moreover, OSHA regulations do not apply to cases such as this one governed by Coast Guard jurisdiction. 29 C.F.R. 1918.-1(b) (1980). Although 44 U.S.C. § 1507 requires the contents of the Federal Register be judicially noticed, Vallot cannot demand admission of the publications as evidence in cases such as this one where they have no relevance.

### Conclusion

Having determined the record before us indicates a reasonable evidentiary basis exists for the jury's verdict, we conclude District Court did not abuse its discretion, but rather, properly denied Vallot's motion for new trial. Nor do we find any error in District Court's exclusion of evidence. The judgment was correct.

AFFIRMED.