William O. CHISHOLM,
Plaintiff-Appellee,

v.

SABINE TOWING & TRANSPORTA-
TION CO., INC., Defendant-Appel-
lant.

No. 81–2325.

United States Court of Appeals,
Fifth Circuit.

June 24, 1982.

H. Lee Lewis, Jr., Houston, Tex., for de-
fendant-appellant.

Stephen M. Rienstra, Port Arthur, Tex.,
for plaintiff-appellee.

Before RUBIN and REAVLEY, Circuit Judges, and HUNTER *, District Judge.

EDWIN F. HUNTER, Jr., District Judge:

Plaintiff, William Chisholm, a member of the crew of the SS SAN JACINTO, brought this suit against his employer under the Jones Act (46 U.S.C. § 688) and general maritime law, claiming that his injuries resulted from the negligence of defendant and the unseaworthiness of the SAN JACINTO. Defendant, Sabine Towing and Transportation Company, was the owner and operator of the vessel. The case was tried in the district court by a Magistrate, without a jury. He concluded that the negligence of Sabine and the unseaworthiness of the vessel were each proximate causes of plaintiff's injuries.[1] Judgment was entered and Sabine appeals.

The Magistrate set forth the important facts; we will but summarize. Just prior to the occasion in question, the SAN JACINTO had been in a shipyard in Tampa, Florida undergoing repairs in her engine room. The scrap iron remaining from the repair work was left unsecured in the engine room. It was customary in instances of this nature for the material to be thrown into the sea after the ship was at sea. Sabine had made a decision to do just that, and on September 4, 1979, four seamen, including the plaintiff, volunteered for overtime work to dispose of the scrap metal. It was not mandatory and additional compensation was paid to the seamen. The work consisted of carrying the individual pieces, each of which weighed between 40 and 50 pounds, up to the vessel's main deck, where they were thrown overboard. Plaintiff alleged that he injured his back while he was lifting a piece of scrap iron. Everyone agrees that this was not dangerous work. The Magistrate expressly found that defendant was not negligent in permitting Chisholm to undertake this job, and that an adequate complement of crewmen was provided to accomplish the assigned task of disposing of the metal. Plaintiff left the vessel about two weeks later, and on December 14, 1979, surgery was performed and resulted in the removal of a herniated disc. In late January of 1980 he returned to the ship in his prior job as an oiler, which job he has retained throughout the trial.

We recite pertinent conclusions of the Court below as they relate to negligence, unseaworthiness and causation:

"2. The Defendant, in allowing its vessel to be put to sea with its engine room cluttered with heavy objects of scrap metal and debris, which were in no way secured or removed from the vessel, at the time of the shipyard repair, or before putting to sea, constituted an unseaworthy condition, and the vessel was not reasonably suitable for her intended service.

"3. The Defendant knew, or in the exercise of due care, should have known that heavy metal objects, unsecured, left in the working area of employees, could, and would in all probability, cause injury to the employees, and the act of failing to clean the ship before it left the repair docks constituted negligence on the part of the Defendant.

"4. The act of the Plaintiff of attempting to remedy a condition which presented a hazard to himself and to others, as a result of the negligence of the Defendant and the unseaworthiness of the vessel, was a cause of his injury, and he is entitled to recover for damages.

"5. It is further concluded that inasmuch as Plaintiff was in the course of attempting to remedy the unseaworthy condition, that Defendant had permitted to exist in the engine room of its vessel, that Plaintiff's injuries were proximately

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. The court found Sabine negligent in leaving the scrap metal in the engine room not secured or tied down, and also that this created an unseaworthy condition because it "could constitute a hazard and an unsafe place to work, especially if the vessel were engaged in rough water or high seas." The vessel was not engaged in rough waters or high seas at the time plaintiff was working in the engine room on the occasion in question.

caused by said unseaworthy condition and the Defendant is, therefore, liable to Plaintiff for his damages."

■ The trial court's resolution of these issues must be considered as findings of fact. *Webb v. Dresser Industries*, 536 F.2d 603 (5th Cir. 1976). Thus, we must accept them unless convinced that they are demonstrably incorrect. F.R.Civ.P. 52(a); *McAllister v. United States*, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); *Allied Chemical Corporation v. Hess Tankship Company*, 661 F.2d 1044 (5th Cir. 1981). We hesitate not a moment to approve the findings that the failure to secure the scrap iron and debris constituted negligence and made the vessel unseaworthy. One might say that below the decks of this vessel a tort lay in wait, ready to strike down an unsuspecting seaman who might be injured by the disorderly condition of the engine room. But this was not what happened. The material was to be retrieved from the engine room, carried to the upper deck and jettisoned overboard. Chisholm was injured as a result of his lifting a piece of iron while in the process of carrying out this objective.

■ The issue quickly narrows: Was the negligence of Sabine or the unseaworthy condition of the SS SAN JACINTO a legal cause of Chisholm's injury? Jones Act negligence and unseaworthiness are two separate and distinct claims. *Usner v. Luckenbach Overseas Corporation*, 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562. This court recognizes two different standards of causation. The "producing cause" standard utilized for Jones Act negligence is the F.E.L.A. standard. The language selected by Congress to fix liability is simple and direct. Defendant must bear responsibility if his negligence played any part, even the slightest, in producing the injury. *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493. The standard of causation for unseaworthiness is a more demanding one and requires proof of proximate cause. In either case the plaintiff's burden has been characterized as very light, even "featherweight." *Vallot v. Central Gulf Lines, Inc.*, 641 F.2d 347, 350 (5th Cir.

1981); *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 331 (5th Cir. 1977); *Landry v. Two-R. Drilling Company*, 511 F.2d 138 (5th Cir. 1975), citing Gilmore & Black, Admiralty (1957), § 6–36, p. 311. In *Peymann v. Perini Corporation*, 507 F.2d 1318 (1st Cir. 1974), the court stated (at p. 1324):

"The reason why under the Jones Act the plaintiff is entitled to a charge that he need show only that defendant's negligence contributed to his injury was fully explained in *Rogers*. Basically it is because, as distinguished from the common law, where defendant's negligence must be the 'sole, efficient, producing cause' and plaintiff would be barred if his own negligence was contributing cause, the Jones Act 'expressly imposes liability upon the employer to pay damages for injury or death due "in whole or in part" to its negligence.' *See* 352 U.S. at 505–507, 77 S.Ct. at 449. But so does the law of unseaworthiness. *Pope & Talbot, Inc. v. Hawn* (1953), 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. This does not mean, in either instance, that defendant's fault must not be shown to be a cause—there must, of course, be a connection—it merely need not be *the* cause. The distinction was well brought out in *Farnarjian v. American Export Isbrandtsen Lines, Inc.*, (2 Cir. 1973) 474 F.2d 361, at 364."

■ Nothing that has been said impairs the principle that in Jones Act cases, cause, in fact, is still a necessary ingredient of liability. Here, the conclusion is inescapable that the plaintiff has been unable to shoulder even the featherweight burden. The fact that the debris was not secured had absolutely nothing to do with his injury. The dilapidated condition of a ship is not grounds for liability when there is no suggestion that the dilapidated condition was the cause of plaintiff's injury. By analogy, see *Hill v. Texaco*, 674 F.2d 447 (5th Cir. 1982); *Robinson v. Zapata Corp.*, 664 F.2d 45, 48 (5th Cir. 1981); *Hess v. Upper Mississippi Towing Corp.*, 559 F.2d 1030 (5th Cir. 1977). Plaintiff, recognizing the tenuousness of its causation argument, suggests the applicability of *Menefee v.*

*Chamberlin*, 176 F.2d 828 (9th Cir. 1949); *Sanford Bros. Boats Inc. v. Vidrine*, 412 F.2d 958 (5th Cir. 1969); and *Stanworth v. American Stern Trawlers, Inc.*, 523 F.2d 46 (9th Cir. 1975). These cases are distinguishable on both the law and the facts. In *Stanworth* the plaintiff slipped in a puddle of diesel oil. The oil was the direct and immediate cause of the slip and fall. In both *Menefee* and *Sanford*, the defendant shipowner had negligently created a dangerous condition which gave rise to an emergency situation, and the plaintiff seaman was injured while responding to that emergency. The danger which invited the response was the cause of the injury in each case. In the present case, plaintiff was not responding to an emergency situation and there was no immediate danger either to him or to the ship. He simply hurt his back carrying the scrap metal to the deck of the ship, a duty which plaintiff readily concedes to be no more than a "normal hazard of his work."

▇ Again, recognizing the tenuousness of his argument, plaintiff seems to rely on the "but for" doctrine, the argument being that if the debris had not been loose, then there would have been no need to throw it overboard. This is just not so. The debris would have been jettisoned in any event. The "but for" argument is not applicable, because the fact that the debris was not secured had nothing to do with its being thrown overboard. Then, too, this Court has rejected, in a Jones Act case, the so-called "but for" argument. *Spinks v. Chevron Oil Company*, 507 F.2d 216, 222 (5th Cir. 1975). There, speaking through Judge Wisdom, we stated:

> "The concept of proximate cause often obscures the true analysis of a tort. A court makes a policy judgment on the limits of liability when causation in fact has been established. Prosser, Torts § 42 (4th ed., 1971). This Court has applied in maritime law the legal cause analysis, as

it is used in common law torts in admiralty. * * *

> "The American Law Institute's Restatement 2d of Torts adopts the modern concept of legal cause. The elements of legal cause are negligence, a causal connection between the negligence and the injury, the invasion of a legally protected interest, and lack of a countervailing legally protected interest as a defense to liability. Restatement 2d Torts, § 9. *The defendant's negligence must be a substantial factor in bringing about the harm,* with no rule of law relieving the actor of fault. Id. § 431. *'Substantial' means more than 'but for' the negligence, the harm would not have resulted, (id.* Com. a.) and more than merely negligible negligence. *Id.* Com. b. The gist of it is that some responsibility for the effect must accompany the cause. *Id.* at 222–23."

The burden of proving the district court's findings "clearly erroneous" is somewhat ameliorated, where as here there are no credibility choices. But with or without that reduced burden, the uncontradicted facts leave us with a definite and firm conviction that a mistake has been committed and that the trial court's findings and conclusions as to causation were patently erroneous.[2]

REVERSED.

REAVLEY, Circuit Judge, dissenting:

The trial court findings do not stop at faulting defendant for having unsecured scrap metal in the engine room, where that metal would be a hazard to seamen walking and standing in rough seas. The defendant was found to be negligent and to create an unseaworthy condition by taking the ship to sea with the metal aboard. The metal constituted a hazard in place as well as a hazard in the course of its removal.

---

**2.** There is simply no place in Jones Act cases for the "substantial factor" language in defining proximate cause, however sensible that may be in other contexts. The two are simply incompatible and joining them is at best con-

fusing, but see American Law Institute Restatement 2d of Torts, Section 431, Comment A, concerning the distinction between cause in fact and cause in a philosophical sense.

The fact that the debris was not secured had nothing to do with its being thrown overboard, but taking the metal to sea for this method of disposal had everything to do with plaintiff seaman's injury in the course of that disposal.

I would affirm.