IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-40552
_____

CHADWICK STERLING MCGUIRE,

Plaintiff-Appellee,

versus

ENSCO INCORPORATED; ET AL.,

Defendants,

ENSCO MARINE COMPANY,

Defendant-Appellant.

Appeal from the United States District Court for
the Southern District of Texas
(USDC No. G-99-CV-380)
_____
June 20, 2002

Before REAVLEY, SMITH and DENNIS, Circuit Judges.

PER CURIAM:[*]

The judgment of the district court is reversed for the following reasons.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1.     While evidence points to harm suffered by McGuire to his back, and that it originated on November 1, 1998, aboard the M/V Ensco Atlas, McGuire failed to prove an injury caused by negligence of others or unseaworthiness of the ship.

2.     The harm is unexplained.  There is no substantial evidence of a particular injury.  McGuire testified that he strained his back while pulling a shock line with a J-hook.  The district court rejected the claim that a shock line was pulled but found that McGuire did pull a heavy line.  There was no evidence that McGuire or anyone manually pulled a heavy line across the deck.  The emergency tow cable was pulled to the winch from the jaws at the stern by the winch itself.  Without evidence to support the court's finding, we must conclude that a mistake was made.

3.     The district court attributed McGuire's injury to negligence that caused the loss of the tow cable (lack of chafing gear and release of the winch by the engineer).  Those remote but-for causes of the work to reconnect the tow were not producing causes of injury to McGuire.  As in Chisholm v. Sabine Towing & Transp. Co., 679 F.2d 60 (5th Cir. 1982), where it was held that the loose metal – though proof of negligence and unseaworthiness – was not a substantial factor of plaintiff's injury in throwing the metal overboard, so here the loose tow was no more than a remote but-for factor and not a producing cause of any subsequent

2

injury aboard ship.

4. The district court also found the failure to make and log a job safety analysis to be negligence producing McGuire's injury, but no evidence relates a failed plan to reconnect the tow to an injury to McGuire.

5. The district court also found that the lack of non-skid paint on the wooden deck and the worn metal surface constituted unseaworthiness producing McGuire's injury, but no evidence supports that finding. We are told by McGuire that other ships paint wooden decks with non-skid paint. Nothing more. Not what difference that made here. Not the condition of the deck where he said his foot slipped – except that it was wet. The difference in painting the deck is not itself proof of unseaworthiness, and it is not connected by proof to any harm to McGuire.

6. Therefore, for lack of proof of negligence or unseaworthiness attributed to defendant producing an injury to McGuire, we must reverse the judgment and render judgment for defendant.

REVERSED AND RENDERED.

DENNIS, Circuit Judge, dissenting.


Based upon a review of the record for clear error, I respectfully dissent for the following reasons.

First, the majority opinion states that "McGuire failed to prove an injury caused by negligence of others or unseaworthiness of the ship." I disagree. We have held that, "For a vessel to be found unseaworthy, the injured seaman must prove that the owner failed to provide a vessel, *including her equipment and crew*, which is reasonably fit and safe for the purposes for which it is to be used."[1] The seaman must establish a causal connection between the injury and a breach of duty that rendered the vessel unseaworthy.[2]

The district court found that a series of negligent acts led to the plaintiff's injury: (1) There was no chafing gear; (2) Without chafing gear, the engineer had to periodically adjust the tow line manually; (3) The engineer accidentally released the tow line causing the entire tow line to fall into the sea; (4) The crew then had to attach an emergency tow line; and finally (5) McGuire was injured during the emergency tow line connection procedure. In my opinion, the record evidence supports the district

---

[1]*Jackson v. OMI Corp.*, 245 F.3d 525 (5th Cir. 2001) (emphasis added).

[2]*Id.*

court's finding that McGuire established a causal connection between his injury and a breach of duty that rendered the vessel unseaworthy.

Second, I do not believe that the record supports the statements: "There is no substantial evidence of a particular injury;" and "There was no evidence that McGuire or anyone manually pulled a heavy line across the deck. The emergency tow cable was pulled to the winch from the jaws at the stern by the winch itself."

The district court judge heard several different versions of how the emergency tow line was connected to the winch. However, the essential parts of the operation were undisputed. After the tow cable was lost, the crew met in the wheelhouse to discuss recovery of the tow. Captain Saunders decided that he would operate the winch controls, Steve Yaun would pilot the boat, and McGuire was in charge on the back deck giving signals and would be manually involved in connecting the emergency tow line. Because they could not recover the original tow line, one of the crew members, Don Menefield, jumped over to the barge. He then released one end of the emergency tow line attached along the side of the barge. This allowed the loose end of the emergency tow line to go into the water. A buoy line was attached to the floating emergency tow line. Menefield jumped back onto the boat and joined other members of the crew on the back deck of the boat as they hooked the buoy line and pulled it onto the deck. The buoy line was pulled up with the air tugger and then secured into the

port shark's jaws. They then pulled on the buoy line to bring the emergency tow line up out of the water and onto the deck. Once the tow line was on the deck, it was secured into the starboard shark's jaws. The shark's jaws are located about two feet from the stern. The video and sketches of the back deck of the boat indicate that the winch was at least 15 feet forward of the shark's jaws. When the tow line was secure in the shark's jaws, the crew connected a "50-ton" shackle to it.[3] The winch cable was either directly connected to the emergency tow line, or connected to the shock line which was in turn connected to the emergency tow line. The shark's jaws were released and the barge was towed to port by the cable and connecting line or lines. Everyone agreed that, between the loss of the towing cable and the connection of the emergency tow line, rain squalls dampened the back deck.

The witnesses disagreed about whether or not a shock line was used in connecting the emergency tow line. Captain Saunders, Don Menefield, and Steve Yaun testified that the winch cable was connected directly to the emergency tow line with a shackle. McGuire and Kenny Jones testified that a shock line was used between the winch cable and the emergency tow line, which would have required two shackles. Captain Saunders testified that he saw McGuire using a J-hook to move a shackle into

_____

[3]A 50-ton shackle is one capable of holding 50 tons. Its actual weight is somewhere between 75 and 90 pounds.

position during the tow line connection. Jones, one of the seamen on board, testified that he saw McGuire grab his back as McGuire was using a J-hook to move a shock line during the rigging up of the emergency tow gear. McGuire told the judge that he didn't remember moving the shackle. He said that he and Don Menefield "dragg[ed] the eye of shock line to the cable that comes off the winch" and then hooked the shackle at both ends. Menefield, on cross-examination, acknowledged that in his deposition he had said that they used a J-hook to pull the emergency tow line onto the boat. He testified that a shackle was used to connect the emergency tow line to the boat's winch cable.

The district court's finding that McGuire and Menefield "proceeded to move a heavy line into position by using a J-hook to pull this line across the back deck of the vessel" is not clearly erroneous. No one denies that a J-hook was used during the emergency tow line connection. Captain Saunders said that he saw McGuire using a J-hook to move a shackle that day. The video shows two crew members using a J-hook to move a shock line before McGuire's accident occurred and Captain Saunders admitted that it was unsafe to do so. Both versions of the emergency tow connection procedure (with or without shock line) required McGuire and Menefield to manually pull a "heavy line" across the deck: the heavy emergency tow line had to be placed into the shark's jaws before the connection to the shackle could be made. Once that

connection was made, the heavy winch cable was moved down the deck and attached to a shackle. The winch cable, the shock line, and the emergency tow line were heavy lines because they were capable of handling the weight of the tow. The majority's statement that the emergency tow line was "pulled to the winch from the jaws at the stern by the winch itself" cannot be literally correct. Logic and the evidence show that a cable or a cable and a shock line were used to make the connection between the winch and the barge's emergency tow line. Regardless of how the tow was reconnected, the record shows that McGuire injured his back on November 1, 1998, during the connection of the emergency tow line to the M/V ENSCO.

Third, the loss of the tow cable was more than a remote but-for factor. As Captain Saunders explained during his testimony, if the engineer had not "inadvertently hit the lever and released the clutch and we lost the cable, I see no reason for anybody to be out on the deck doing what we had to do. We would have continued on with the tow because as far as the tow function went, the tow went good except for the rough weather with the hurricane." The defendant's negligence in allowing the tow to be lost was a substantial factor in bringing about the harm. As shown in the video and as is evident from the testimony at trial, a towing connection is ordinarily made at port in calm waters, not in the open sea. Without the loss of the towing cable, there was no reason for McGuire, a captain, to be on the boat's back deck, pulling on heavy lines

and shackles connecting a tow line in inclement weather.

In reviewing the results of an action tried without a jury, the district court's findings of fact "shall not be set aside unless clearly erroneous."[4] We must give due regard to the district court's opportunity to judge the witnesses' credibility.[5] It seems clear to me that the district court resolved the conflicting stories regarding how the tow was reconnected in favor of McGuire. Because the district court's findings of fact are not clearly erroneous in light of the record viewed in its entirety, I believe we should affirm. "Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."[6] For these reasons, I dissent.

---

[4]Fed. R. Civ. P. 52(a).

[5]Fed. R. Civ. P. 52(a).

[6]*Tokio Marine & Fire Ins. Co., Ltd. v. FLORA MV*, 235 F.3d 963, 970 (5th Cir.2001) (citing *Anderson v. City of Bessemer City,* 470 U.S. 564, 573-74 (1985).