Don LEPARD, Plaintiff,

v.

**AMERICAN RIVER TRANSPORTATION CO., Defendant.**

No. 01–CV–683–WDS.

United States District Court, S.D. Illinois.

Jan. 14, 2003.

Dennis M. O'Bryan and Kirk E. Karamanian, O'Bryan, Baun et al., Birmingham, MI, for plaintiff.

James K. Mondl and James O. Hacking, Tonkin & Mondl, St. Louis, MO, for defendant.

## MEMORANDUM & ORDER

STIEHL, District Judge.

This matter is before the Court on the defendant's motion for summary judgment

to which plaintiff has filed a response and defendant a reply. Plaintiff seeks recovery under the Jones Act, and general maritime law of unseaworthiness, for injuries he sustained while employed as a watchman aboard the M/V Co-op Venture on or about February 26, 2001. Plaintiff claims that he injured his lower back as a result of replacing face wires by stringing out new wire to replace kinked face wire on board the vessel.

## FACTUAL SUMMARY

The parties agree that the following occurred. On February 26, 2001, the plaintiff and a co-worker, Mike Johnson, were assigned by Captain Kientz to change out, or replace, the starboard face wire which had become kinked on the M/V Co-op Venture.[1] To replace the wire, plaintiff and his co-worker strung out the new wire along the deck of the barge, then released and loosened the old face wire, removing all the slack from the wire. The new wire was then pulled up onto the barge, and hooked into a winch with a clamp. Finally, the excess slack was taken up and wrapped around the various deck fittings used to connect the boat to the barges in tow, and the wire was tightened. (Lepard Dep. at 71–74.) Plaintiff felt no back pain during any of these procedures. (Id.). They completed the task near the end of their shift. (Id. at 62). Later that morning, the boat crew conducted a fire drill. (Id. at 112). Plaintiff was on watch and it was plaintiff's duty to get to the radio and establish communications with the wheelhouse. (Id.). Plaintiff went to bed soon thereafter, around 11:45 A.M. or Noon, (id. at 119), and when he awoke and reached for his alarm clock, he felt a pain in the small of his back. Plaintiff filled out an illness/injury report on February 27, 2001,

in which he stated that he hurt his back while in bed. (Id. at 88–89).

Plaintiff asserts that he and dockhand Mike Johnson had advised Ronnie Kirk, the first mate to Captain Dan Murphy, sometime earlier, that the wires were becoming kinky, but that Murphy had refused to allow the crew to change out the wire. (Kirk Dep. at 8). Murphy acknowledges that Lepard approached him concerning the condition of the one of the face wires and requested that it be replaced. (Murphy Dep. at 10–11). Murphy was relieved, mid-trip, by Captain Rennie Kientz, on February 16, 2001. Plaintiff complained to Kientz about the condition of the wires, Kientz confirmed their condition with Kirk, and gave the crew permission to change out the wires. (Kientz Dep. at 12; Lepard Dep. at 60).

Plaintiff initially thought he had pulled a muscle, but later informed Kirk that he had hurt his back, and told Kirk that he had changed out the face wires (Kirk Dep. at 15, 56). Kirk advised Captain Kientz and an accident report was completed. (Kirk Dep. at 14–15; Lepard Dep. at 62–63). Plaintiff was eventually treated by Dr. Terrence Braden. In his initial notes of the medical examination, Braden made no mention of plaintiff changing out face wires as a possible cause for his injury (Braden Dep. at 11.) Braden testified at his deposition that the work which plaintiff performed on the morning of February 26, 2001, could have caused plaintiff's back pain and herniated disc (Id. at 36–38). Braden also stated that he was unable to definitively state what caused plaintiff's back injury, and that it could have occurred as a result of a wide variety of activities. (Braden Dep. at 9, 15–16).

---

1. Kinky face wire is analogized to what happens when you curl ribbon. (Lepard Dep. at 69). A kinky wire is more difficult to work with than straight wire (Id. at 76–77,79; Kientz Dep. at 10; Murphy Dep. at 9; Hopkins Dep. at 7–8).

Plaintiff has been gainfully employed since his injury.

## DISCUSSION

The defendant seeks summary judgment on the grounds that under the Jones Act and maritime law, plaintiff cannot argue that a potentially dangerous condition aboard the vessel which is being remedied constitutes a negligent condition,[2] and on the alternative ground that he cannot establish the cause of his back injury.

### A. Analysis—Jones Act Claims and Unseaworthiness Claims

The Jones Act provides a cause of action based on negligence for "any seaman... injured in the course of his employment." 46 U.S.C.App. § 688(a). *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). If a worker satisfies the "seaman" definition, he may recover under the Jones Act "whenever [he is] injured in the service of a vessel, regardless of whether the injury occurs on or off the ship." *Chandris*, 515 U.S. at 360, 115 S.Ct. 2172. "Proof of negligence (duty and breach) is essential to recovery under the Jones Act." *Perkins v. American Elec. Power Fuel Supply*, 246 F.3d 593, 598 (6th Cir.1989). Further, plaintiff's claim is reviewed "under the 'ordinary prudence' standard normally applicable in negligence cases." *Id.* Once a plaintiff establishes negligence of his employer, he need only then establish that the "employer's negligence is the cause, in whole or part, of his injuries." *Id.,* quoted in *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 447 (6th Cir. 2001). "In other words, once negligence is established, the plaintiff need only show that [his] employer's negligence 'played any part, even the slightest, in producing the injury or death for which damages are

sought.'" *Rannals,* 265 F.3d at 447–48, *(quoting Rogers v. Missouri Pac. R.R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)).

The Jones Act "incorporates the standards of the Federal Employers' Liability Act ... which renders an employer liable for the injuries negligently inflicted on its employees by its officers, agents or employees." *Hopson v. Texaco, Inc.,* 383 U.S. 262, 263, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966). Under FELA, an employer has a duty, which is non-delegable, to provide a safe work place for its employees. *Payne v. Baltimore & Ohio R.R. Co.,* 309 F.2d 546, 549 (6th Cir.1962).

Proof of a Jones Act claims differs from an unseaworthiness claim. The Fifth Circuit has distinguished the two causes of action as follows:

> The Jones Act authorizes a seaman injured by a shipowner's negligence to file suit. 46 U.S.C.App. § 688. Negligence includes the knowing or careless breach of an obligation a shipowner owes to a seaman. Obligations to the seaman include duties to provide (1) a safe place to work, (2) a seaworthy vessel and tools, (3) an adequate crew, and (4) adequate instructions. In addition to proving the breach of a duty, a plaintiff must show the shipowner had actual constructive knowledge of the dangerous condition that injured the plaintiff.... Unseaworthiness is a cause of action distinct from Jones Act negligence. A ship's owner has an absolute and indelible duty to furnish a seaworthy vessel without regard to fault or negligence. The owner, however is not "obligated to furnish an accident free ship." To be seaworthy, the vessel and it appurte-

---

**2.** Defendant's motion is addressed to plaintiff's Jones Act claim only. However, plaintiff also seeks recovery under general maritime

law for unseaworthiness, a separate cause of action, as is discussed more fully later in the body of this Memorandum and Order.

nances must be reasonably suited for their intended purpose.

*Kiger v. Doucet & Adams, Inc.,* 1997 WL 644086 (E.D.La.1997) *(quoting Billedeaux v. Tidex,* 3 F.3d 437, 1993 WL 347039, 1994 A.M.C. 1103, 1105 (5th Cir.1993)) (citations omitted). In a Jones Act case the "[d]efendant must bear responsibility if his negligence played any part, even the slightest, in producing the injury. The standard of causation for unseaworthiness is a more demanding one and requires proof of proximate cause. In either case the plaintiff's burden has been characterized as very light, even 'featherweight.'" *Chisholm v. Sabine Towing & Transp. Co.,* 679 F.2d 60, 62 (5th Cir.1982) *(quoting Vallot v. Central Gulf Lines, Inc.,* 641 F.2d 347, 350 (5th Cir.1981)) (internal citations omitted).

### 1. Jones Act Negligence of the Plaintiff's Employer

▮▮ Under the Jones Act, an employer has a duty to provide a safe workplace for its employees. Courts employ a three part test for a Jones Act case. First the plaintiff must establish that he was a seaman. This is not at issue in this case. Second, plaintiff must show that he was acting within the scope of his employment at the time he suffered his injury, again, not at issue. Finally, plaintiff must show that the defendant, or one of its agents played a part in the plaintiff's injury. *Perkins,* 246 F.3d at 598. The Supreme Court has stated that the Jones Act was intended to expand the protection for seamen, and generally does not allow "the application of rules of the common law which would affect [seamen] harshly." *Socony–Vacuum Oil Co. v. Smith,* 305 U.S. 424, 431, 59 S.Ct. 262, 83 L.Ed. 265 (1939). In assessing the role of the defendant, courts have held that an employer owes a duty to assign employees to work for which they are suited. *Moreno v. Grand Victoria Casino,* 94 F.Supp.2d 883, 895 (N.D.Ill.2000) (citation omitted). This means that an employer will breach that duty if it negligently assigns an employee to perform work beyond his capacity or if it knew or should have known that its assignment exposed the employee to an unreasonable risk of harm. *Id.* In this case, the record seems clear that the presence of kinky face wire can be hazardous, as it is more difficult to work with than straight wire. (Lepard Dep. at 76–79; Kientz Dep. at 10; Murphy Dep. at 9). The plaintiff has established that the first captain knew that the wires were kinked, but refused to have them replaced because he felt it was too soon. (Kirk Dep. at 9). In light of this, it appears that plaintiff has established that an agent of the defendant may have played a role in plaintiff's injury. Plaintiff can argue that had the face wires been replaced earlier, the task would not have been so difficult and he might not have been injured. Given that plaintiff's showing need only be "featherweight," the record seems to preclude summary judgment on the Jones Act claim.

The defendant asserts that plaintiff cannot recover for injuries which result from correcting a hazardous condition, citing *inter alia, Spinks v. Chevron Oil Co.,* 507 F.2d 216, 226–27 (5th Cir.1975) and *Chisholm v. Sabine Towing & Transp. Co.,* 679 F.2d 60, 62–63 (5th Cir.1982). However, that line of cases is not controlling in this action. In *Spinks,* the plaintiff attempted to recover when he slipped on soap suds he had put on the deck to clean an oily residue. *Spinks* is distinguishable from the facts of this case because it dealt with the unseaworthy condition of the vessel. In *Chisholm,* the plaintiff injured himself while throwing scrap metal overboard. Plaintiff had argued that because the metal was not secured, he was injured, but the *Chisholm* court noted that the "dilapidated condition of a ship is not grounds for liability when there is no suggestion that the dilapidated condition was the cause of the

plaintiff's injury." 679 F.2d at 62. Again, this is a seaworthiness issue, not a negligence, Jones Act issue. Here, plaintiff has asserted that the fact that the defendant, or its agent in the form of the Captain, knew that the wire was kinked for some time was the hazardous condition which the defendant created.[3]

Accordingly, the Court **DENIES** defendant's motion for summary judgment on plaintiff's Jones Act claim.

### 2. Unseaworthiness

■ The standard for seaworthiness is not that a vessel must be absolutely perfect, but rather, it must be reasonably fit for the vessel's intended service. *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944). Merely because an injury occurs does not establish, under the general maritime doctrine of seaworthiness, that the vessel was unseaworthy. *Mosley v. Cia. Marit. Adra. S.A.*, 314 F.2d 223, 227 (2d Cir.1963). The Court **FINDS** that plaintiff cannot support a claim of unseaworthiness in this action because he is claiming that he was injured when he was working to remedy a known condition. *See, eg. Chisholm*, 679 F.2d at 62. This does not amount to an unseaworthy vessel. Under the facts of this case, as presented in the record, plaintiff cannot sustain both a Jones Act claim and a general maritime claim of unseaworthiness. Accordingly, the Court **GRANTS** defendant's motion for summary judgment on plaintiff's claim of general maritime liability for unseaworthiness.

### B. Plaintiff's Ability to Establish Causation

■ This argument of the defendant deserves little discussion. For purposes of summary judgment, the plaintiff has placed a genuine issue of material fact into the record as to whether his back injury was caused by his act of replacing the face wire. Plaintiff's treating physician, Dr. Braden, has indicated that the act of changing out the face wire could have resulted in his back injury. (Braden Dep. at 37–38). Under the Jones Act, plaintiff's burden is "featherweight" and he has met that burden. The defendant is free to argue to the jury that plaintiff did not originally attribute his back pain to the face wire job, and also may cross examine Dr. Braden on the fact that there may be many causes of a back injury of the nature of plaintiff's. Nonetheless, plaintiff has sufficiently placed a question of material fact as to the cause of his back injury into the record and the defendant is not entitled to summary judgment on the issue of causation, and the motion on this ground is **DENIED**.

### CONCLUSION

For the above stated reasons, the Court **GRANTS** in part and **DENIES** in part defendant's motion for summary judgment. The motion is **GRANTED** on plaintiff general maritime claim of unseaworthiness and **DENIED** on plaintiff's claims of causation and Jones Act recovery.

**IT IS SO ORDERED.**

---

**3.** The Court might have reached a different conclusion if plaintiff had been replacing the face wire on a regular rotation of parts replacement without any indication that the wire was in a questionable, even dangerous, condition. However, in this case, the defendant was put on notice of the condition of the wire, and thereby arguably was negligent.