[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12586
Non-Argument Calendar

_____

D.C. Docket No. 8:17-cr-00270-VMC-MAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ENITE ALINDOR,
a.k.a. Odette Dureland,
a.k.a. Yvrose Policin,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(January 13, 2020)

Before MARTIN, ROSENBAUM and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, defendant Enite Alindor, also known as Odette Dureland and Yvrose Policin, appeals her convictions for knowingly making false statements to procure naturalization, in violation of 18 U.S.C. § 1425(a) ("Count 1"), and knowingly making false statements under oath in a proceeding relating to the naturalization and citizenship of an alien, in violation of 18 U.S.C. § 1015(a) ("Count 2").  On appeal, Alindor argues: (1) that there was insufficient evidence to sustain her § 1425(a) conviction on Count 1 under the disqualifying fact-based theory outlined in Maslenjak v. United States, 582 U.S. ___, 137 S. Ct. 1918 (2017); and (2) that the district court erred in denying her motions to redact the indictment, to exclude evidence concerning her 2006 arrest, and to take judicial notice.  After review of the record and the parties' briefs, we affirm.

## I.  DISCUSSION

As the parties are familiar with the facts of this case, we do not recount them in detail.  We include only those facts necessary to address the particular issues Alindor raises on appeal.

As to Count 1,[1] Alindor argues that the government failed to present evidence that she knowingly procured naturalization under Maslenjak's

---

[1]Alindor does not challenge the sufficiency of the evidence supporting the jury's verdict on Count 2.  The district court sentenced Alindor to 5 months' imprisonment on each count, to be served concurrently, and three years of supervised release on each count, also to be served concurrently.  Alindor has completed her term of incarceration.

2

disqualifying fact-based theory, the only theory of guilt found by the jury.  We

discuss Maslenjak first.

**A.    Supreme Court's Maslenjak**

Section 1425(a) makes it a crime for a person to "knowingly procure[ ] or

attempt[ ] to procure, contrary to law, the naturalization of any person, or

documentary or other evidence of naturalization or of citizenship."  18 U.S.C.

§ 1425(a).  In Maslenjak, the Supreme Court held that § 1425(a)'s "contrary to

law" element requires not only that the defendant committed some other illegal act

in the course of procuring naturalization, but that the defendant's other illegal act

must have "played some role in" the acquisition of naturalization.  Id. at ___, 137

S. Ct. at 1923-1925, 1927.  Thus, where the defendant's alleged other illegal act is

making a false statement, the government must prove a "means-end connection,"

or "causal influence," between the defendant's false statement and her

naturalization.  Id. at ___, 137 S. Ct. at 1923, 1925-27.  This is an objective inquiry

focusing on whether "knowledge of the real facts would have affected a reasonable

government official properly applying naturalization law."  Id. at ___, 137 S. Ct. at

1928.

In Maslenjak, the Supreme Court identified two ways the government can

establish the required causal link: (1) under a disqualifying-fact theory, or

(2) under an investigation-based theory.  Id. at ___, 137 S. Ct. at 1928-29.  Under

3

the disqualifying-fact theory, "[i]f the facts the defendant misrepresented are themselves disqualifying . . . there is an obvious causal link between the defendant's lie and her procurement of citizenship." Id. at ___, 137 S. Ct. at 1928. In that circumstance, "the true facts lying behind [the] false statement . . . in and of themselves justify denial of citizenship." Id. at ___, 137 S. Ct. at 1928-29 (quotation marks omitted) ("[W]hen the defendant misrepresents facts that the law deems incompatible with citizenship, her lie must have played a role in her naturalization.").

Under the investigation-based theory, if the misrepresented facts concerned matters that, while not themselves disqualifying, "could have led to the discovery of other facts" that would be disqualifying, then those facts are sufficiently linked to the underlying naturalization decision to fall within the ambit of § 1425(a). Id. at ___, 137 S. Ct. at 1929 (quotation marks omitted). When relying on this investigation-based theory, the government "must make a two-part showing": (1) "that the misrepresented fact was sufficiently relevant to one or another naturalization criterion that it would have prompted reasonable officials, seeking only evidence concerning citizenship qualifications, to undertake further investigation"; and (2) "[i]f that much is true, . . . that the investigation . . . would predictably have disclosed some legal disqualification." Id. at ___, 137 S. Ct. at 1929 (quotation marks omitted). However, even if the government meets its

4

burden under the investigation-based theory, the defendant retains a complete defense by showing a qualification for citizenship.  Id. at ___, 137 S. Ct. at 1930.

Here, although the government relied on both methods to prove the causal link required by Maslenjak, the jury found Alindor guilty on Count 1 "[u]nder the first method," that is under the disqualifying-fact theory.[2]  On appeal, Alindor contends the government did not prove beyond a reasonable doubt that she knowingly made a false statement about the disqualifying fact—that she never had been ordered removed from the United States—during her naturalization proceedings.[3]

---

[2]The special verdict form instructed the jury that if it found Alindor guilty of Count 1 under the "first method," i.e., the disqualifying-fact theory, it should "then STOP" and should only "continue under the second method," i.e., the investigation-based theory, if the jury found Alindor not guilty under the first method.  The jury found Alindor guilty of Count 1 under the first method and did not make a finding as to the second method.  Because the jury did not consider the investigation-based theory, we do not address whether the government presented sufficient evidence to prove that theory.

[3]"This Court reviews de novo whether there is sufficient evidence to support a guilty verdict in a criminal trial.  In so doing, this Court views the evidence in the light most favorable to the Government and resolves all reasonable inferences and credibility evaluations in favor of the verdict."  United States v. Isnadin, 742 F.3d 1278, 1303 (11th Cir. 2014) (citation omitted).  "Evidence is sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt."  Id. (quotation marks omitted).
The parties dispute whether Alindor raised this particular argument in her initial and renewed motions for a judgment of acquittal and therefore whether our review should be only for plain error.  We need not resolve this issue, however, because even under de novo review, Alindor's sufficiency-of-the-evidence argument lacks merit.

**B.    Sufficiency of the Evidence as to Count 1**

After reviewing the trial evidence, we conclude that the government presented ample evidence from which the jury reasonably could have found as to Count 1 that during her naturalization process, defendant Alindor misrepresented a fact—that she had never been ordered removed from the United States—that was itself disqualifying.

Specifically, the government presented evidence that in February 1997, the defendant, using the name Enite Alindor, applied for asylum.  When Alindor failed to appear at her March 27, 1997 asylum interview or at subsequent removal hearings before an immigration judge on September 10, 1997 and October 15, 1997, she was ordered removed to Haiti in absentia.  However, Alindor was never removed.

In March 1997, Marcel Polissaint (a male) filed a Form I-130 Visa Petition for Alien Relative on behalf of the defendant, whom he identified as "Odette Dureland" and "Odette Polissaint" and claimed was his sister.  Although this visa petition was approved, defendant Alindor did not use it to adjust her immigration status.

Instead, in 2000, defendant Alindor, now using the name "Yvrose Policin" and noting a prior name of "Yvrose Dureland," was granted asylum through her husband Malio Dureland's Form I-730 Refugee/Asylee Relative Petition.  In 2006,

6

defendant Alindor, having changed her legal name to Odette Polissaint Dureland, adjusted her status to lawful permanent resident.

The government established that the defendant was both Enite Alindor and Odette Polissaint Dureland/Yvrose Policin through matching fingerprint cards and photographs submitted at various stages of the defendant's immigration proceedings and a fingerprint card obtained after her arrest on federal charges.[4] The government also presented circumstantial evidence that Alindor and Dureland were the same person, including that Dureland and Alindor shared the same birthplace of Aquin, Haiti, their birthdays were precisely one year apart, and Dureland's mother's maiden name was Alindor.

The government also presented evidence of defendant Alindor's Form N-400 Application for Naturalization that contained the false statement. Specifically, in 2012, defendant Alindor, still using the name Dureland, applied for naturalization with the United States Citizenship and Immigration Services ("USCIS"). In her Form N-400 application, Dureland certified, under penalty of perjury, that, among other things, she had never been ordered removed, excluded, or deported from the United States (Question 27) and had never applied for any kind of relief from removal, exclusion, or deportation (Question 28). Dureland

---

[4]In addition to "Enite Alindor" and "Odette Dureland," the defendant used the names "Odette Polissaint," "Yvrose Policin," and "Yvrose Dureland."

7

also did not disclose "Enite Alindor" as a name she had used in the past (Part 1(C)).  During her subsequent naturalization interview, Dureland, under oath, again failed to disclose any of this information.

After the interview, Dureland's application was approved, and she became a naturalized citizen a week later.  However, once an alien has been ordered removed, USCIS has no authority to grant the alien immigration benefits under a different name.  The USCIS officer who interviewed Dureland and approved her N-400 application testified at trial.  That USCIS officer testified that had USCIS known about Dureland's prior removal order as Enite Alindor, USICS would have denied Dureland's application and she would not have obtained U.S. citizenship.

On appeal, defendant Alindor does not dispute that the government proved: (1) that Alindor and Dureland were the same person; (2) that she falsely stated on her Form N-400 application and in her naturalization interview that she had never been ordered removed from the United States; or (3) that a reasonable USICS officer, knowing that she had been ordered removed in 1997, would have immediately denied her application for naturalization.  Rather, on appeal, Alindor argues only that the government failed to prove that she knew the statement was false when she made it because there was no evidence she received the notices of her removal hearings or the in absentia removal order.

8

Alindor's argument is not persuasive.  First, if Alindor and Dureland are one and the same, as the jury clearly and reasonably concluded, then Alindor applied for asylum in February 1997 and then failed to do anything more with respect to her asylum claim.  At that point, Alindor would have known that she was staying in the United States illegally and subject to removal, regardless of whether she received official notice of the removal order.

Furthermore, if Alindor were unconcerned about her immigration status in the United States and believed, in ignorance, that she was allowed to stay in this country despite not having received asylum based on her 1997 application, she would not have pursued other immigration relief as "Yvrose Policin," "Odette Polissaint," and "Odette Dureland" through her brother (Marcel Polissaint) and her husband (Malio Dureland).  The fact that the defendant failed to disclose her earlier asylum application filed as "Enite Alindor" further supports the jury's finding that the defendant was hiding her immigration past from USCIS during her naturalization process.  Viewing the evidence in the light most favorable to the government, a reasonable jury could conclude that the defendant knew she was subject to a removal order as "Enite Alindor" when she completed her N-400 application and attended her naturalization interview as "Odette Dureland." Accordingly, based on the government's evidence, a reasonable jury could find beyond a reasonable doubt that the defendant knowingly procured naturalization

9

by lying about the 1997 removal order issued against her on her N-400 and in her naturalization interview.

## C.    Evidentiary Rulings

The district court did not abuse its discretion in denying Alindor's three trial motions.[5]  As to the defendant's motion to redact the name "Enite Alindor" from her indictment, this Court has held that "[t]he use of an alias in an indictment and in evidence is permissible if it is necessary to connect the defendants with the acts charged." United States v. Hines, 955 F.2d 1449, 1454 (11th Cir. 1992) (quotation marks omitted).  As discussed above, the government submitted substantial evidence that the defendant used the name Enite Alindor in her first attempt to obtain asylum and then later switched to the names Yvrose Policin, Odette Polissaint, and Odette Dureland, and also lied about her past immigration history as Enite Alindor, in order to successfully obtain asylum, adjustment of status, and, ultimately, naturalization.  The use of Alindor's various aliases, including Enite Alindor, in the indictment was necessary to connect her to the crimes with which she was charged.  In addition, Alindor was not prejudiced by the presence of the Enite Alindor name in her indictment given that the parties generally referred to

---

[5]A district court's ruling on the admission of evidence is reviewed for abuse of discretion. United States v. Jayyousi, 657 F.3d 1085, 1113 (11th Cir. 2011).  "An abuse of discretion occurs where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact."  Id. (quotation marks omitted).

her as "the defendant" during her trial and the district court instructed the jury that the indictment was not evidence of the defendant's guilt.

The district court also did not abuse its discretion in denying Alindor's pretrial motion to exclude evidence of her 2006 arrest in Broward County, Florida for using a false name on an application for a Florida driver's license.  Count 2 of the indictment charged Alindor with knowingly making false statements under oath in a matter relating to the naturalization and citizenship of an alien, in violation of 18 U.S.C. § 1015(a).  One of five false statements charged in Count 2 was "as to . . . her prior arrest history."

At trial, the government presented evidence that defendant Alindor stated under oath in her N-400 application that she never had been arrested (Question 16). Later, Alindor confirmed this statement under oath to the USCIS officer conducting her naturalization interview.  Only after the USCIS officer confronted Alindor with documentation of her arrest did Alindor change her story.  Under the circumstances, we agree with the district court that evidence of Alindor's 2006 arrest was admissible as intrinsic evidence necessary to complete the story of, and inextricably intertwined with the evidence regarding, the § 1015(a) offense charged in Count 2.  See United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000).

In addition, evidence that Alindor misrepresented her arrest record during her naturalization proceedings until an USCIS official confronted her with it was

11

relevant to her intent to commit the offense alleged in Count 1. Contrary to Alindor's argument, the fact that this false statement was not the disqualifying fact that underpinned her conviction on Count 1 does not make it immaterial or irrelevant under Federal Rule of Evidence 401. Based on the government's evidence, Alindor's misrepresentation about her arrest history was just one of several misrepresentations she made during her naturalization process, including that she had never applied for asylum before and that she had never used another name, that would not have immediately disqualified her for naturalization. However, the jury was free to infer that Alindor's misrepresentations—all of which occurred contemporaneously—were intentional, rather than accidental, because she believed, rightly or wrongly, that the true facts might jeopardize her naturalization application.

We are not persuaded by Alindor's argument that evidence of her 2006 arrest was improper character evidence under Federal Rule of Evidence 404(b). As intrinsic evidence, it falls outside the scope of Rule 404(b) and is independently admissible so long as its probative value is not substantially outweighed by unfair prejudice under Federal Rule of Evidence 403. See United States v. Ford, 784 F.3d 1386, 1393 (11th Cir. 2015). Notably, the government also presented evidence that: (1) USCIS was aware of Alindor's February 2006 arrest in August 2006, when it adjudicated her application for adjustment of status and issued her a

12

green card, and (2) the USCIS officer conducting her 2012 naturalization interview did not consider this particular false statement, discussed and corrected during the interview, to be a basis for denying Alindor's naturalization application because the 2006 charge was dropped. This additional evidence significantly lessened any prejudice from the fact of her prior arrest. Under these circumstances, we conclude that any prejudicial effect of the arrest evidence was not substantially outweighed by its probative value.

Finally, the district court did not abuse its discretion in refusing defendant Alindor's request to take judicial notice of pleadings filed in Ossmann Desir's 2008 federal criminal prosecution for tax fraud. In April 1997, Desir assisted Alindor's brother in preparing a Form I-30 visa petition on behalf of Alindor using the name Odette Dureland. A decade later, Desir was prosecuted in the Southern District of Florida for a tax fraud scheme in which, according to Alindor, Desir submitted fraudulent tax returns to the IRS using personal identifying information he obtained from his immigration consulting agency clients.

Defendant Alindor wanted to submit to the jury certified copies of Desir's indictment and judgment of conviction, arguing that they supported a reasonable inference that Desir submitted Dureland's fingerprints along with the February 1997 Alindor asylum application for some unknown person who had a criminal history and needed fingerprints unconnected to any crimes. The district court

13

refused to take judicial notice of Desir's tax fraud conviction, finding it was too attenuated to be relevant. The district court stressed that there was no evidence Desir had anything to do with the fingerprint card submitted with Alindor's February 1997 asylum application.

We find no abuse of discretion. Beyond mere speculation, defendant Alindor offered no evidence that Desir was involved in the preparation of her February 1997 asylum application or that Desir had anything to do with Alindor's fingerprint card submitted with that asylum application. Indeed, Alindor has presented no evidence that Desir ever engaged in immigration fraud. The fact that Desir was convicted of tax fraud more than ten years after defendant Alindor submitted her asylum application with the fingerprint card was not relevant to whether Alindor committed the immigration offenses charged in this case. The district court was within its discretion to refuse to take judicial notice of facts that are not relevant to the issues in the case. See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); Vallot v. Cent. Gulf Lines, Inc., 641 F.2d 347, 351 (5th Cir. 1981) (affirming district court's refusal to take judicial notice of information the movant failed to establish was relevant).[6]

---

[6]This Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Having found no error in the district court's challenged evidentiary rulings, we likewise reject Alindor's argument as to cumulative error.  See United States v. Glamory, 635 F.3d 480, 497 (11th Cir. 2011) ("Where there is no error or only a single error, there can be no cumulative error.").

## III.  CONCLUSION

For all of the forgoing reasons, we affirm Alindor's convictions and sentences.

**AFFIRMED.**