In the Matter of R.C. WYNN, Debtor.

R.C. WYNN, Appellant–Cross–Appellee,

v.

Eric ERIKSSON, Christopher F. McGratty and CMW Investment Group, Inc., Appellees,

Halliburton Company, Appellee–Cross–Appellant.

No. 88–1741.

United States Court of Appeals, Fifth Circuit.

Dec. 8, 1989.

Pat S. Holloway, Austin, Tex., for appellant-cross-appellee.

R.C. Wynn, Dallas, Tex., pro se.

John A. Gilliam, Howard W. Walker, Dallas, Tex., for appellees.

Thomas G. Schroeter, Mayor, Day & Caldwell, Houston, Tex., for amicus curiae, Seattle–First Nat. Bank.

Before CLARK, Chief Judge, GEE, and SMITH, Circuit Judges:

GEE, Circuit Judge:

In today's appeal we decide a plethora of issues raised by a defendant faced with a Chapter 7 involuntary bankruptcy proceeding. After careful consideration, we conclude that most of them are entirely without merit and none requires reversal.

*Facts*

The bankruptcy proceeding arises out of an unsuccessful oil-drilling venture. During 1983 and 1984, Wynn drilled approximately eighteen wells. Eriksson, McGratty, and CMW invested in the venture and were assigned working interests in the wells.

Eriksson and McGratty now assert that through January 1, 1985, Wynn wrongfully failed to disperse any of the wells' proceeds

to them, instead depositing these revenues in his personal bank account. CMW claims that it received only a partial payment on its percentage interest, and then only after pressuring Wynn for an accounting. The three creditors also contend that Wynn retains an amount of advanced and unexhausted predrilling expenses, agreed at the start of the venture to be returned. McGratty separately claims that Wynn failed to honor a $82,277.65 promissory note, which was executed to serve as security for his investment. Halliburton Company provided to Wynn's corporation, styled the AAA Operating Company, goods and services valued at more than $2,000,000. Stanley Well Service, Lynco Tank Corp., and RMC Drilling also provided goods and services to AAA.

In July of 1985, Wynn's creditors filed an involuntary Chapter 7 dissolution petition. In August of 1987, the court granted the creditors relief. Over Wynn's objections, Wynn's attorney then petitioned the bankruptcy court to withdraw from his representation. The court granted the attorney's motion and Wynn has since acted *pro se.*

In granting Chapter 7 relief, the bankruptcy court found, pursuant to section 303 of the Bankruptcy Code, that the claims of at least 3 creditors (Eriksson, McGratty, and CMW) were not contingent as to liability or subject to a bona fide dispute; that the aggregate value of these three creditors' claims exceeded the liens against Wynn's property by over $5,000; that over 12 unsecured creditors existed; that the debtor was not generally paying his creditors as his debts became due; that substantial amounts were past due; and that the creditors had acted in good faith. The bankruptcy court also determined, however, that the trade creditors' (Halliburton, Stanley, Lynco and RMC) claims against Wynn, while not contingent, were subject to a bona fide dispute. This being so, these creditors individually had no standing to compel an involuntary dissolution.

Wynn argued before the district court that the bankruptcy judge violated Bankruptcy Rule 1013(a), which mandates timely orders for relief. He also asserted that the bankruptcy judge erred in allowing Wynn's counsel to withdraw from the case, forcing him to proceed *pro se* through the district court; that the judge coerced Wynn's attorney to accept the order for relief during a "settlement conference"; and that Wynn was excluded from the conference, although his attorney was present.

The district court affirmed the bankruptcy court in all of its findings of fact and conclusions of law. Rejecting Wynn's 1013(a) argument, the district court placed much of the blame for delay on Wynn and his discovery tactics. It also rejected, as unsupported by the record, Wynn's accusation that the bankruptcy judge had coerced Wynn's attorney into allowing the order of relief "against his clients best interests."

On petition for rehearing before the district court, Wynn argued for the first time that he was denied his seventh amendment right to a jury trial. The district court declined to consider the newly raised constitutional issue and denied a rehearing.

### Discussion

■ Wynn asks us to hold, as matter of law, that a two-year gap between the filing and the granting of relief violates Bankruptcy Rule 1013(a).[1] Because speed is enjoined by 1013(a), Wynn believes relief to have been improperly granted in this case. *See Matter of B.D. Int'l. Discount Corp.,* 15 B.R. 755, 759 (Bankr.S.D.N.Y.1981) (section mandates speed).

The creditors respond by stating that the delay stemmed from Wynn's own conduct:

> Wynn's opposition to discovery requests, frequent motions for continuances and his nonresponsiveness to settlement proposals initiated by the petitioning creditors, and encouraged by the bankruptcy court, resulted in well over a year's delay in resolving this case to the detriment of Wynn's creditors.

---

1. Contested Petition. The court shall determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter other appropriate orders. Bankr.R. 1013(a) (Supp. 1988).

Further, as the creditors properly point out, any delay in ordering involuntary Chapter 7 relief inures to the benefit of the debtor, Wynn. Wynn was free to continue to operate his business and to acquire and dispose of assets during the interim period. He gained the advantage of repaying debts and avoiding involuntary dissolution entirely. By comparison, the creditors risked the continued diminution and dispersal of the remaining assets. *See Matter of B.D. Int'l.,* 15 B.R. at 759.

Wynn accurately states that the purpose of the bankruptcy law, in general, and Rule 1013(a), in particular, is to provide "an expeditious mechanism for creditors to collect their debts and ... to provide the debtor with a prompt 'fresh start.' " Having said that, he fails to recognize that he gained a windfall by the delay and should be thankful that a trustee was not placed in charge of his assets earlier. In addition, rewarding insolvent debtors who successfully delay Chapter 7 petitions by dismissing their cases would only encourage delay by debtors.

The two-year delay benefited Wynn, who now seeks relief because the bankruptcy court did not act against his interests earlier. Rule 1013(a) is designed to allow creditors to force bankruptcy courts to grant relief expeditiously and before the debtor's remaining assets are squandered. Although two years may seem a long time, the district court did act expeditiously. It committed no error.

*Withdrawal of Counsel*

■ An attorney may withdraw from representation only upon leave of the court and a showing of good cause and reasonable notice to the client. *See Streetman v. Lynaugh,* 674 F.Supp. 229 (E.D.Tex.1987). The withdrawal of an attorney in a given case is a "matter entrusted to the sound discretion of the court and will be overturned on appeal only for an abuse of that discretion." *Streetman,* 674 F.Supp. at 234; *accord United States v. Dinitz,* 538 F.2d 1214 (5th Cir.1976) (en banc), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977); *Broughten v. Voss,* 634 F.2d 880 (5th Cir.1981).

The bankruptcy court granted Attorney Simon's request to withdraw after hearing Wynn's response to the motion in open court. Attorney Simon cited time demands that interfered with his ability to represent Wynn as the reason for his motion.

Before us, Wynn maintains that the bankruptcy court, by dismissing Attorney Simon, deprived him of his "constitutional right of counsel of choice in civil litigation." The cases that he cites, however, define no such right, standing instead for the proposition that a litigant must be *afforded a fair opportunity to secure counsel of his choice,* not that he has an absolute right to select any counsel he desires. Wynn next complains, inconsistently, that he has a right to Attorney Simon's assistance even though Simon "corruptly sold out" to the creditors. He also claims to be without funds to retain substitute counsel, even though there is no evidence that Attorney Simon was representing Wynn without compensation.

Next Wynn advances *Potashnick v. Port City Construction Co.,* 609 F.2d 1101 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980) for the proposition that the Fifth Circuit "has repeatedly recognized such constitutional right of counsel of choice in *civil* litigation." *Potashnick,* however, stands for no such thing.

*Potashnick* held merely that the district court denied a civil defendant his right to counsel when it ordered the defendant not to consult with his attorney during short court recesses while in the process of testifying. It is therefore inapposite here, and the bankruptcy court did not err when it permitted Mr. Simon to withdraw.

*Right to Jury Trial*

■ A party who participates in the determination of the issues—without objecting and reminding the court of its jury request—is barred from later raising the issue on appeal. *United States v. 1966 Beechcraft Aircraft Model King Air,* 777 F.2d 947 (4th Cir.1985). *See also Southland Reship Inc. v. Flegel,* 534 F.2d 639 (5th Cir.1976); *Bass v. Hoagland,* 172 F.2d 205 (5th Cir.), *cert. denied,* 338 U.S. 816, 70

S.Ct. 57, 94 L.Ed. 494 (1949); *In re Muller,* 72 B.R. 280 (C.D.Ill.1987). Wynn argued that he was denied his seventh amendment right to a jury trial for the first time on petition for rehearing. His failure to raise the issue sooner bars him from raising it here.

*Expedited Motions*

This case is before us on an expedited "Motion as to Content of Record on Appeal F.R.A.P. 10(e)" and an emergency F.R.C.P. 60(b) motion. Wynn complains that the entire record was not before the district court on appeal. Alternatively, if the entire record is not available, he wants certain portions he believes filled with half-truths removed from the creditors' briefs under F.R.A.P. 10(e), which mandates that the record on appeal be "made to conform to the truth." He also asks that we stay this appeal so the district court can consider his 60(b) motion to vacate judgment.

These motions amount simply to continued stall tactics and lack merit. His failure to finance the cost of transcripts is the source of his frustration and the basis of his argument for reversal of the lower courts. As a law school graduate, Wynn should know better. His eleventh-hour motions are denied. As to the remainder of Wynn's points, we have considered them all [2] but find that they do not merit discussion. Halliburton's cross-appeal is moot. The judgment of the district court is

AFFIRMED.

**2.** Wynn argues: 1) that a civil defendant in an involuntary bankruptcy proceeding has a constitutional right to transcripts, similar to that of indigent criminal defendants to be represented by counsel; 2) that the order for relief was the product of fraud in the bankruptcy court by his own attorney; 3) that the bankruptcy court erred when it determined that Wynn was not paying his debts as they became due, and so on; 4) that one creditor's claim, essential to the involuntary petition, was improper because (a) it was subject to a bona fide dispute or (b) was de minimis, and 5) that another essential creditor's claim was contingent and thus could not have been a basis for the petition.