# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30963

United States Court of Appeals
Fifth Circuit

**FILED**

December 19, 2018

Lyle W. Cayce
Clerk

DAVID J. RANDLE,

Plaintiff - Appellant

v.

CROSBY TUGS, L.L.C.,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:

While working aboard the M/V DELTA FORCE, David J. Randle suffered a stroke. The nature of his injury was not immediately apparent, and the captain of the vessel called 911. The emergency responders took Randle to a nearby hospital, where physicians failed to diagnose his condition correctly. As a result, Randle did not receive medication that might have improved his post-stroke recovery. Randle sued the owner of the M/V DELTA FORCE, arguing that it breached its duty under the Jones Act to provide Randle with prompt and adequate medical care. The district court granted the vessel owner's motion for summary judgment. We AFFIRM.

No. 17-30963

**I.**

Crosby Tugs, L.L.C. ("Crosby"), employed Randle as a seaman aboard the M/V DELTA FORCE. On the morning of Randle's stroke, the vessel was temporarily docked in Amelia, Louisiana. Randle had been unloading a grocery delivery onto the boat when he began to feel fatigued and lightheaded. He retreated to his cabin to rest. Shortly thereafter, a fellow crewmember heard a banging coming from Randle's cabin. The crewmember discovered Randle incapacitated on the cabin floor and unable to communicate. The crewmember immediately notified the captain, who quickly called 911.

Acadian Ambulance Services ("Acadian") responded to the call. At the direction of the Louisiana Emergency Response Network ("LERN"), Acadian transported Randle to Teche Regional Medical Center ("TRMC"). Crosby did not instruct Acadian to take Randle to TRMC. Nor did Crosby hire, authorize, or otherwise contract with TRMC to administer medical care to its seamen.

Although the Acadian paramedics suspected that Randle was suffering from a stroke, the TRMC physicians failed to diagnose his condition as such. After performing a CT scan without contrast and consulting a telemedicine physician in New Orleans, the TRMC physicians diagnosed Randle with a brain mass and transferred him to another hospital for further treatment. Randle's medical expert testified that TRMC's physicians could have "easily" diagnosed the stroke if they had administered a CT scan with contrast.

Because the TRMC physicians failed to diagnose Randle's stroke correctly, they did not administer "tissue plasminogen activator," a medication that could have improved Randle's post-stroke recovery. To be effective, the medication must be administered within three hours of the stroke. By the time Randle's stroke was correctly diagnosed, it was too late for the medication to be effective.

No. 17-30963

Randle is permanently disabled because of the stroke and needs constant custodial care. He brought suit against Crosby, arguing that Crosby negligently failed to provide prompt and adequate medical care; provided an unseaworthy vessel; and failed to provide maintenance-and-cure benefits.

The district court granted Crosby's motion for partial summary judgment on Randle's negligence and unseaworthiness claims. The parties settled Randle's maintenance-and-cure claim prior to this appeal. On Randle's motion, the district court certified the partial summary judgment as a partial final judgment pursuant to Federal Rule of Civil Procedure 54(b), from which Randle could appeal.

## II.

"We review a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

Randle appeals only the district court's entry of summary judgment on his negligence claims.[1] Under the Jones Act, "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law . . . against [his] employer." 46 U.S.C. § 30104. A Jones Act seaman's rights parallel those of a

---

[1] Randle only discusses unseaworthiness claims generally, using such claims as an analogy to his negligence claim. Because he does not challenge the district court's entry of summary judgment on his unseaworthiness claim, we consider this argument to be forfeited. *See United States v. Scroggins*, 599 F.3d 433, 447 (5th Cir. 2010) (finding argument not adequately presented where brief did not discuss the issue "in any depth").

railroad employee under the Federal Employers' Liability Act ("FELA"). *Id.* (making applicable all statutes "regulating recovery for personal injury to, or death of, a railway employee" to a seaman's Jones Act action); *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997) (en banc). "A seaman is entitled to recovery under the Jones Act, therefore, if his employer's negligence is the cause, in whole or in part, of his injury." *Gautreaux*, 107 F.3d at 335 (citing 45 U.S.C. § 51 (imposing liability on railroads for the negligence of their officers, agents, or employees)).

Randle argues that Crosby, through its employees, acted negligently by merely calling 911 in response to his stroke. Randle also argues that Crosby is vicariously liable for the TRMC physicians' alleged medical malpractice. We address each argument in turn.

**A.**

Randle contends that Crosby breached its duty to provide adequate medical care by merely calling 911 in response to his stroke. A shipowner has a nondelegable duty to provide prompt and adequate medical care to its seamen. *De Zon v. Am. President Lines*, 318 U.S. 660, 667 (1943); *De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 140 (5th Cir. 1986). Thus, a shipowner is directly liable to its seaman under the Jones Act when it fails to provide proper medical care. *Cent. Gulf S.S. Corp. v. Sambula*, 405 F.2d 291, 298 (5th Cir. 1968).

The extent of the shipowner's duty to provide medical care depends on "the circumstances of each case" and "varies with the nature of the injury and the relative availability of medical facilities." *Id.* at 300. A shipowner breaches its duty to provide prompt and adequate medical care "when [it] fails to get a crewman to a doctor when it is reasonably necessary, and the ship is reasonably able to do so." *Olsen v. Am. S.S. Co.*, 176 F.3d 891, 896 (6th Cir. 1999); *see also De Centeno*, 798 F.2d at 140. A shipowner also violates this duty

4

when it takes its seaman to a doctor it knows is not qualified to care for its seaman's injury. *See Sambula*, 405 F.2d at 299-300.

Randle has not put forth evidence demonstrating a genuine issue of material fact as to whether Crosby fulfilled its duty to provide medical care under these circumstances. Randle was suffering an unknown but clearly urgent medical emergency in the service of a ship away from its home port.  By calling 911, Crosby's employees selected the course of action reasonably calculated to get Randle to a medical facility that would be able to treat him. Randle acknowledges that TRMC could have properly diagnosed and treated his stroke by administering a CT scan with contrast. That the TRMC physicians may be faulted does not mean that Crosby is directly liable for failing to procure adequate medical care. Under these circumstances, Crosby made reasonable efforts to secure appropriate medical treatment, and it was not negligent in its provision of medical care to Randle.[2] *Cf. id.* at 301 (noting, in considering shipowner's treatment of seaman's severe eye injury, "[t]he law does not require prognostic omniscience of the master, but it does impose upon him a duty to make reasonable efforts to secure the treatment leading most naturally to sight rather than blindness").

---

[2] Randle also urges that he should have been taken to a stroke center, which would have been more likely to diagnose his stroke. But the test is not, with the benefit of hindsight, whether Randle received the *best* care, but instead, whether the care he received was reasonable under the circumstances. As discussed above, Randle's medical expert testified that TRMC was capable of properly treating his stroke. Moreover, Randle has not demonstrated that Crosby could have reasonably taken other action. Randle has not shown that there was a stroke center nearby, that Crosby was capable of extracting Randle from the vessel and taking him to a stroke center itself, or that Crosby could have instructed the ambulance to go to a specific hospital. In fact, Randle admitted that he did not believe there was anything else Crosby's employees could have done to help him, and that his own "instinct" would have been to call 911. Thus, there is no genuine issue of material fact that Crosby procured prompt and adequate care under the circumstances.

No. 17-30963

Randle analogizes his case to *De Centeno* and *Sambula*, arguing that Crosby failed to take him to a capable medical provider. But neither case alters our conclusion that Crosby acted reasonably under the circumstances. Unlike *De Centeno*, this is not a case where the shipowner procured initial treatment and then did nothing as the seaman's condition continued to deteriorate. *See* 798 F.2d at 139-40. Nor is this case like *Sambula*, in which we concluded that the shipowner acted negligently by taking its seaman to a general practitioner, rather than an ophthalmologist. 405 F.2d at 300-01. In *Sambula*, the seaman's eye injury was "such that even a layman could have recognized the possibility of internal eye damage." *Id.* at 293. Here, Crosby's employees did not know what was wrong with Randle, nor was it obvious. Thus, unlike the shipowner in *Sambula* who provided its seaman with the incorrect type of care, Crosby properly sought out emergency medical services given the nature of Randle's illness.

Randle has not shown that there is a genuine issue of material fact as to whether Crosby acted negligently by calling 911. Therefore, we conclude that the district court properly granted summary judgment for Crosby on Randle's direct liability claim.

## B.

Randle argues that Crosby should also be held vicariously liable for the TRMC physicians' alleged medical malpractice. A shipowner is liable "for the injuries negligently inflicted on its employees by its 'officers, agents, or employees.'" *Hopson v. Texaco, Inc.*, 383 U.S. 262, 263 (1966) (per curiam) (quoting 45 U.S.C. § 51). The word "agents" is given "an accommodating scope," requiring only that the "employee's injury [be] caused in whole or in part by the fault of others performing, under contract, operational activities of his employer." *Id.* at 264 (quoting *Sinkler v. Mo. Pac. R.R. Co.*, 356 U.S. 326, 329 (1958)). Thus, a shipowner is vicariously liable for the negligence of an on-

No. 17-30963

board physician in its employ. *De Zon*, 318 U.S. at 668. We have also held that a shipowner is vicariously liable for an on-shore physician "it chooses to treat its seaman." *De Centeno*, 798 F.2d at 140; *see also Sambula*, 405 F.2d at 299 (stating standard for vicarious liability for on-shore physician as "whether the ship was negligent in selecting and relying upon [the physician]").[3]

But this "accommodating scope" is not boundless—even in the context of FELA, the Supreme Court has defined an agent as one "performing, *under contract*, operational activities of [the] employer." *Hopson*, 383 U.S. at 264 (emphasis added) (quoting *Sinkler*, 356 U.S. at 329). We are not aware of any case holding that FELA overrides agency principles such that an employer will be liable for the acts of an unrelated third party. Accordingly, we have recognized that a shipowner will not be held vicariously liable for the negligence of a physician that the seaman chooses himself. *Joiner v. Diamond M. Drilling Co.*, 688 F.2d 256, 262 n.9 (5th Cir. 1982).

Therefore, although we must give the word "agent" an "accommodating scope," we cannot forget the basic principles of agency law. Randle argues that a shipowner's vicarious liability arises from its nondelegable duty to provide adequate medical care, regardless of whether the shipowner employs or affirmatively selects the medical provider. This reasoning misconstrues agency

---

[3] Our sister circuits have similarly noted that shipowners may be held vicariously liable for physicians they affirmatively select, hire, or with whom they have a contract. *E.g.*, *Dise v. Express Marine, Inc.*, 476 F. App'x 514, 521-22 (4th Cir. 2011) (unpublished) (holding tugboat owner not vicariously liable where it did not take an "affirmative act to select or otherwise engage the [physician]"); *Greenwell v. Aztar Ind. Gaming Corp.*, 268 F.3d 486, 492 (7th Cir. 2001), *abrogated on other grounds by McCarter v. Ret. Plan for Dist. Managers of Am. Family Ins. Grp.*, 540 F.3d 649, 653 (7th Cir. 2008) (finding casino boat owner not vicariously liable where doctors were neither employees of the boat nor acting on its behalf ); *Olsen v. Am. S.S. Co.*, 176 F.3d 891, 895-96 (6th Cir. 1999) (noting that "a shipowner is liable for the negligence of an on-shore physician that it hires to treat a crewman," and may be vicariously liable "when the shipowner selects a doctor who acts negligently" (citing *De Centeno*, 798 F.2d at 140)); *Fitzgerald v. A. L. Burbank & Co.*, 451 F.2d 670, 680 (2d Cir. 1971) (finding physician was shipowner's agent where services were provided under contract).

principles: a nondelegable duty cannot create an agency relationship because such a duty presupposes an agency relationship. Put otherwise, an agency relationship is only formed when the principal takes an affirmative act to select the agent—regardless of the principal's duty to a third party. *See Crist v. Dickson Welding, Inc.*, 957 F.2d 1281, 1286 (5th Cir. 1992) ("For the doctrine of apparent authority to apply, the principal must first *act to manifest* to an innocent third party the alleged agent's authority." (emphasis added)); Restatement (Third) of Agency § 3.01 (Am. Law Inst. 2006) ("Actual authority . . . is created by a principal's *manifestation to an agent* that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf." (emphasis added)); *id.* at § 3.03 cmt. b (apparent authority "originates with expressive conduct by the principal toward a third party"). Thus, "[a] principal is subject to liability [for failure to perform a nondelegable duty] when the principal owes a duty to protect a third party and an agent *to whom the principal has delegated performance of the duty* fails to fulfill it." *Id.* at § 7.03 cmt. b (emphasis added).

As applied here, Crosby (the principal) had a nondelegable duty to provide adequate medical care to Randle; Crosby would be vicariously liable if it had "delegated performance of the duty" to an agent, and the agent acted negligently in carrying out the duty. But no such agency relationship was formed here because Crosby did not manifest authority to TRMC or its physicians, or otherwise express its assent that TRMC act on its behalf. Randle does not argue that Crosby directed the ambulance to go to TRMC, and it is not clear that Crosby had the power to do so. There is no evidence of a relationship between Crosby and TRMC. Thus, Randle has not demonstrated that Crosby, by calling 911, intended TRMC to act as its agent, and the district court properly granted summary judgment on this issue.

No. 17-30963

Randle contends that the district court's holding is inconsistent with the Supreme Court's decision in *Hopson* and our decisions in *De Centeno* and *Sambula*. But these cases do not support Randle's position. In *Hopson*, the Supreme Court held that a shipowner was liable for the negligence en route of a taxi it had hired to fulfill its statutory duty to take two ill seamen to the United States consulate. 383 U.S. at 264. Likewise, in *De Centeno*, we held a shipowner vicariously liable for its chosen physician's negligence in misdiagnosing its seaman's diabetes. 798 F.2d at 139-140. And in *Sambula*, we found a shipowner vicariously liable for the malpractice of a general practitioner it had negligently selected to treat its seaman's eye injury. 405 F.2d at 300-01.

These cases support the proposition that medical providers that a shipowner *selects* "are deemed to be engaged in the ship's business as 'agents' despite the fact that the practitioner may be an independent contractor or completely unrelated to the ship." *Dise v. Express Marine, Inc.*, 476 F. App'x 514, 521 (4th Cir. 2011) (unpublished). But these cases do not override the basic principles of agency law requiring that an agency relationship arise from the principal's act in selecting the agent, rather than its nondelegable duty. And because Crosby did not select TRMC as its agent or otherwise express its assent that TRMC would act on its behalf, there was no agency relationship here. Crosby called 911. The 911 dispatcher sent Acadian to respond to the call. After responding to the call, Acadian called LERN, the state's emergency response network. LERN instructed Acadian to take Randle to TRMC. There is no evidence Crosby knew how this sequence of events would unfold, much less that it was aware that LERN would direct Acadian to taken Randle to TRMC. Thus, TRMC was not Crosby's agent.

Therefore, we find that there is no genuine issue of material fact as to whether Crosby is vicariously liable for the TRMC physicians' alleged

Case: 17-30963    Document: 00514767049    Page: 10    Date Filed: 12/19/2018

malpractice, and we affirm the district court's grant of summary judgment on this issue.[4]

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[4] Randle also challenges the proper standard of care for his medical malpractice claims. Because we find that Crosby is not vicariously liable for TRMC's alleged medical malpractice, we do not reach this issue.