STEPHEN A. HIGGINSON, Circuit Judge:
This personal injury Jones Act case presents two issues. The first is whether the district court erred by failing to act on an allegation that the defendant-appellee provoked the plaintiff-appellant's attorney to withdraw. The second is whether the district court erroneously granted summary judgment to the defendant-appellee because the plaintiff-appellant lacked expert medical evidence of causation. On the first issue, we affirm. On the second, we reverse and remand.
BACKGROUND
Plaintiff-Appellant James Earlton Gowdy sued Defendant-Appellee Marine Spill Response Corporation (MSRC) for unseaworthiness and Jones Act negligence. Gowdy alleged that he, while employed as a seaman aboard one of MSRC's vessels, injured his left foot when he stepped off the last rung of a ladder that was dangerously raised four feet off the floor. He also claimed that there was clutter beneath the ladder that required him to jump off to the left. There were no witnesses to the incident.
Represented by attorney Matthew Shaffer, Gowdy filed a complaint in the United States District Court for the Southern District of Texas. Less than three months into the litigation, Shaffer moved to withdraw as counsel, citing "irreconcilable differences over issues related to ... the management of this litigation." Gowdy opposed the motion. After a hearing, the district court permitted Shaffer to withdraw. Gowdy alleged that counsel for MSRC caused Shaffer's withdrawal by providing Shaffer with "false and misleading information about another person with a similar name." Specifically, Gowdy averred that MSRC's counsel sent Shaffer certain documents from a Mississippi criminal case against someone named James Edward Gowdy. According to Gowdy, Shaffer pointed at MSRC's counsel at the conclusion of the hearing on the motion to withdraw and said, "Here's the guy who sent us all this false information about you."
*203 Following Shaffer's withdrawal, Gowdy proceeded (and remains) pro se.
MSRC eventually moved for summary judgment. The motion was filed electronically on July 31, 2017. Three hours later, a "Motion to Oppose Summary Judgment" from Gowdy was electronically entered on the docket. It had been postmarked July 29, 2017. With due acknowledgement of Gowdy's pro se status, the district court construed that filing as Gowdy's response to MSRC's motion or, alternatively, a cross-motion for summary judgment. We will do the same.
MSRC's motion began by describing Gowdy's pre-incident medical history of diabetes and chronic kidney disease, as was revealed both in Gowdy's deposition and also in the deposition of his long-time treating physician, Dr. Chad Clause. Dr. Clause's records reflected that Gowdy had been receiving treatment for pressure ulcers on his left foot for about two-and-a-half years preceding the ladder incident. The records also indicated that Gowdy went to see Dr. Clause about four days after the ladder incident. Dr. Clause's notes from that appointment stated, "On boat, hit foot, painful, red."
During the deposition, Dr. Clause described that appointment as concerning "an injury" that was "something additional to what we were doing at that time." Dr. Clause also characterized that injury as a "trauma." The day after Gowdy's appointment with Dr. Clause, a CT scan revealed fractures in Gowdy's left foot.
Dr. Clause's records described Gowdy's foot as having developed "Charcot changes," which Dr. Clause described as a "breakdown of certain areas of the foot." According to Dr. Clause, Charcot is typically experienced by patients with diabetes and it can be triggered by "any kind of trauma to the foot." As Dr. Clause laid out the timeline in this case, "From the trauma when he had an injury at work, ... that's when we ended up treating the fracture. And from the fracture ... after that is when he developed the Charcot." According to Dr. Clause, "the Charcot never arose until after ... he had the fracture."
A month after the incident, Dr. Clause performed foot surgery on Gowdy. Two months after that, Gowdy underwent a second surgery to correct complications from the first. Due to continuing problems, Gowdy's foot was later amputated.
MSRC's motion for summary judgment highlighted testimony from Dr. Charles Bain, its designated biomechanical expert. Dr. Bain explained that he had examined the depositions of Gowdy and Dr. Clause along with medical records from the seven medical facilities that had treated Gowdy. He also reviewed photographs of the accident site. Based on that evidence, Dr. Bain opined that Gowdy's foot injury "would not have occurred by Mr. Gowdy stepping off the bottom rung of the ladder." He specified:
Based on the various imaging studies' reports, Mr. Gowdy sustained either a high energy impact to his left mid foot or a crush injury. This type of injury would not occur by stepping off the bottom (fourth) welded rung on the wall of the engine room. Stepping off this rung can be made in a controlled manner. Even coming off the bottom rung in an uncontrolled manner is unlikely to yield the loading necessary to cause Mr. Gowdy's injuries. Mr. Gowdy has described jumping off the bottom rung. Had he done this and landed solely on his left foot, it is unlikely to see his injury pattern considering the low energy involved with this maneuver.
Dr. Bain concluded, "[I]t is likely that Mr. Gowdy's fractures and joint disruptions in his left foot developed insidiously over *204 time and were not the result of a one-time loading event."
MSRC's motion for summary judgment argued that Gowdy's failure to designate an expert of his own was "fatal to his claim" because a Jones Act plaintiff bears the burden of proving causation by medical expert testimony.
Gowdy's opposition highlighted Dr. Clause's observation that the Charcot changes had occurred in his left foot only after the ladder incident. Gowdy also cited three exam summaries from post-incident medical visits indicating that Gowdy's left foot evinced Charcot changes while his right foot had no deformity. He argued, "It is something anyone can understand; you cannot step off a 48 inch high ladder rung to a metal floor and expect to not get injured."
After a hearing, the district court orally granted MSRC's motion "because [Mr. Gowdy did] not have an expert to testify to the jury on the issue of medical causation." A written order followed, which stated that Gowdy's evidence was insufficient to create a genuine dispute of material fact as to whether the damage to his left foot was caused by MSRC's negligence.
With liberal construction, Gowdy's brief on appeal presents two issues for our review: (1) whether the district court erred by granting Shaffer's motion to withdraw and failing to investigate allegations that MSRC provoked the withdrawal, and (2) whether the district court erred in granting summary judgment to MSRC.
DISCUSSION
I. Withdrawal of Counsel
a. Standard of Review
"An attorney may withdraw from representation only upon leave of the court and a showing of good cause and reasonable notice to the client." Matter of Wynn , 889 F.2d 644, 646 (5th Cir. 1989). The matter of attorney withdrawal is "entrusted to the sound discretion of the court and will be overturned on appeal only for an abuse of that discretion." Id. (quotation omitted).
b. Analysis
Gowdy suggests that the district court erroneously permitted his former counsel, Shaffer, to withdraw. Gowdy also argues that the district court should have investigated his allegations that MSRC was involved in the withdrawal. Both arguments fail.
First, all evidence in the record indicates that Gowdy's attorney made a showing of good cause and provided reasonable notice to his client. Shaffer's motion to withdraw described "irreconcilable differences over issues related to ... the management of [the] litigation" and certified that he had conferred with his client on the matter. No evidence calls the veracity of those statements into question or suggests an alternative set of facts. Shaffer also noted accurately that withdrawal would not materially prejudice Gowdy because the litigation was in its early stages.
Second, the district court took procedural care in resolving Shaffer's withdrawal motion. The court prudently held a hearing on the motion, at which time Gowdy had the opportunity to present his opposition.
Finally, Gowdy's own description of the conduct that the district court allegedly failed to investigate indicates that the district court was not required to do so. Gowdy's theory is that MSRC's counsel provided Shaffer with information that Shaffer knew to be about a different person. Gowdy does not explain, nor does common sense, why information identifiably about a person unrelated to a case would cause an attorney to withdraw.
*205 In sum, we affirm the decision to grant Shaffer's motion to withdraw and discern no error in the district court's handling of this issue.
II. Summary Judgment
a. Standard of Review
We review a grant of summary judgment de novo, applying the same standards as the district court. Austin v. Kroger Texas, L.P. , 864 F.3d 326, 328 (5th Cir. 2017). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." Austin , 864 F.3d at 328 (quotation omitted). "All evidence is viewed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in that party's favor." Id. at 328-29.
"A seaman is entitled to recovery under the Jones Act ... if his employer's negligence is the cause, in whole or in part, of his injury." Randle v. Crosby Tugs, L.L.C. , 911 F.3d 280, 283 (5th Cir. 2018) (quoting Gautreaux v. Scurlock Marine, Inc. , 107 F.3d 331, 335 (5th Cir. 1997) (en banc)). "The standard of causation in Jones Act cases is not demanding." Johnson v. Cenac Towing, Inc. , 544 F.3d 296, 302 (5th Cir. 2008). Indeed, a claim under the Jones Act requires only that employer negligence "played any part, even the slightest , in producing the injury." Id. (citing Chisholm v. Sabine Towing & Transp. Co., Inc. , 679 F.2d 60, 62 (5th Cir. 1982) ).
"Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea." Beech v. Hercules Drilling Co., L.L.C. , 691 F.3d 566, 570 (5th Cir. 2012). (quotation omitted). "There is a more demanding standard of causation in an unseaworthiness claim than in a Jones Act negligence claim." Johnson v. Offshore Express, Inc. , 845 F.2d 1347, 1354 (5th Cir. 1988). An unseaworthiness claim requires proximate causation, and "a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." Id.
b. Analysis
At issue is whether the district court erred by ruling as a matter of law that Gowdy was required to produce expert medical evidence of causation.[1] The well-settled "general rule" about expert testimony is that it is unnecessary when jurors, as people "of common understanding," are "as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation." Salem v. U.S. Lines Co ., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962) (quotation omitted). For that reason, in "many if not most" cases, expert testimony is not needed because "jurors are generally entitled to draw their own inferences from the evidence."
*206 Huffman v. Union Pac. R.R ., 675 F.3d 412, 419 (5th Cir. 2012) (discussing causation under the Federal Employers Liability Act (FELA)); cf. Brown v. Parker Drilling Offshore Corp ., 410 F.3d 166, 178 (5th Cir. 2005) ("Jones Act cases follow cases under the FELA.").
However, "when conclusions as to the evidence cannot be reached based on the everyday experiences of jurors," expert testimony is needed. Huffman , 675 F.3d at 419. Put differently, expert evidence is "often required" where "the nexus between the injury and the alleged cause would not be obvious to the lay juror." Wills v. Amerada Hess Corp ., 379 F.3d 32, 46 (2d Cir. 2004) (citing Moody v. Maine Cent. R.R. Co ., 823 F.2d 693, 695 (1st Cir. 1987) ).
i. Negligence
This court has had relatively few opportunities to opine about when expert medical testimony is needed to survive summary judgment in a Jones Act negligence case. We have not required expert testimony as always necessary to prove Jones Act causation. See Naquin v. Elevating Boats, L.L.C ., 744 F.3d 927, 931 n.65 (5th Cir. 2014) (despite no expert medical testimony on Jones Act plaintiff's claim for mental anguish damages, finding that the claim "was supported by the testimony of his wife, his visits to doctors and social workers, and his prescription use of an anti-depressant drug following the accident"). Rather, we follow the general rule that expert testimony is unnecessary when lay fact-finders are capable of understanding causation.[2] Because that inquiry is highly context-dependent, we are guided by example.
In toxic tort cases, expert testimony is often required. For instance, in Seaman v. Seacor Marine L.L.C ., this court determined that the plaintiff needed expert testimony to rebut the defense expert's opinion that second-hand smoke, rather than hazardous chemicals, caused the plaintiff's cancer. 326 F. App'x 721, 729 (5th Cir. 2009). The court reasoned that lay fact-finders lack the requisite scientific knowledge about harm-causing levels of exposure to chemicals. Id. at 723. Similarly, in Wills v. Amerada Hess Corporation , the Second Circuit explained that expert testimony was needed on the question of whether exposure to toxic chemicals caused squamous cell carcinoma because that causal link was "sufficiently beyond the knowledge of the lay juror." 379 F.3d 32, 46 (2d Cir. 2004) (Sotomayor, J.). The court observed that it had "never held that a Jones Act plaintiff can survive summary judgment in a toxic tort case without admissible *207 expert testimony on the issue of causation." Id.
Expert testimony has also been required in cumulative trauma cases. For example, in Myers v. Illinois Central Railroad Company , "neither [the plaintiff] nor his physicians could point to a specific injury or moment that brought on the problems with his knee, elbow, and back and neck." 629 F.3d 639, 643 (7th Cir. 2010).[3] Instead, the plaintiff claimed that the injuries were "the product of years of working for the Railroad." Id. The Seventh Circuit applied the rule that "unless the connection between the negligence and the injury is a kind that would be obvious to laymen, expert testimony is required." Id. at 642. The court observed that cumulative trauma injuries "can be caused by a myriad of factors, none of which is obvious or certain" and therefore, most often, expert testimony is required. Id . at 643 (citing Brooks v. Union Pacific Railroad Co ., 620 F.3d 896, 899-900 (8th Cir. 2010) (expert needed for degenerative disk disease); Granfield v. CSX Transp., Inc ., 597 F.3d 474, 484-487 (1st Cir. 2010) (expert needed for epicondylitis ); Moody v. Maine Cent. R.R. Co ., 823 F.2d 693, 696 (1st Cir. 1987) (expert testimony needed for emotional trauma)).
By contrast, expert testimony is not required in cases where the nature of the injury can be understood by lay fact-finders based on ordinary knowledge and experience. In Tufariello v. Long Island Rail Road Co ., the Second Circuit gave two examples: "a broken leg from being struck by an automobile" and "hearing loss [from] repeated exposure to noise so loud that it causes physical pain or ear-ringing." 458 F.3d 80, 89 (2d Cir. 2006) (citing Simpson v. Northeast Ill. Regional Commuter R.R. Corp ., 957 F.Supp. 136, 138 (N.D. Ill. 1997) for the first example); see also Myers , 629 F.3d at 643 ("[W]hen a plaintiff suffers from a broken leg or a gash when hit by a vehicle, he doesn't need to produce expert testimony.").
That an injury is acute does not necessarily bring it into the realm of ordinarily cognizable cases. In Brooks v. Union Pacific Railroad Co ., the Eighth Circuit confronted facts resembling but slightly differing from the instant case, and the difference is instructive. 620 F.3d at 897. The plaintiff, Robert Brooks, sued Union Pacific Railroad Company (Union Pacific) under the FELA to recover damages for a back injury he claimed to have suffered during an acute traumatic event at work. Id. Unlike Gowdy, who identified the exact four-foot-high step that allegedly caused his injury, Brooks stated only that he experienced acute pain "while working underneath a locomotive" on a particular date; he could not "point to a specific incident that injured him." Id. at 897, 899. During litigation, Brooks never designated an expert witness, but he did produce medical records and offer an affidavit from his treating physician, who gave a medical opinion that "Brooks's work for Union Pacific caused or contributed to [his] injury." Id . at 898 (quotation marks omitted). Union Pacific designated an expert who produced a report stating that Brooks had no specific injury correlated with his employment. Id. Then, Union Pacific moved for summary judgment, which the court granted. Id. Brooks appealed. Id.
The Eighth Circuit held that "[b]ecause the type of injury Brooks suffered had no obvious origin, expert testimony [was] necessary *208 to establish even that small quantum of causation required by FELA." Id. at 899 (internal quotation marks and citation omitted). In other words, the link between any negligence associated with conditions underneath a locomotive and acutely injuring one's back was deemed to be not "obvious to laymen." Id.
Whereas it is reasonable to assume that the average lay fact-finder lacks understanding of the physical risks attendant to general working conditions under a locomotive as in Brooks , the danger implicated by stepping down from a four-foot-tall ladder rung falls within ordinary understanding. Stepping down from a high ladder rung and fracturing one's foot is closer to breaking one's leg after being hit by a car than to developing cancer after years of toxic tort exposure or experiencing a back injury explicable only by general working conditions underneath a train. The causal link in this case can be understood by jurors based on everyday knowledge and experience.
The only remaining wrinkle is whether a layperson's ability to understand the injury's causal link to the ladder step changes in light of Dr. Bain's expert opinion that Gowdy's step down from the ladder did not cause the injury. When an expert casts doubt on something that is normally obvious, does the thing cease to be obvious?
Our caselaw indicates no. "Juries are often asked to make difficult decisions and, even when expert evidence is available to assist them, they are not bound to follow the experts. The jury may discredit expert testimony and base its decision on its collective judgment and experience." Moore v. Johns-Manville Sales Corp ., 781 F.2d 1061, 1064-65 (5th Cir. 1986) ; cf. Western Air Lines, Inc. v. Criswell , 472 U.S. 400, 423, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985) (explaining that jurors may attach "little weight" to expert testimony they find "unpersuasive").
In this case, a jury could find Dr. Bain's declaration unconvincing. Dr. Bain stated that Gowdy "sustained either a high energy impact to his left mid foot or a crush injury" but that his "injury would not [have] occur[ed] by stepping off the [ladder]" because even if Gowdy had jumped off the ladder "and landed solely on his left foot, it is unlikely to see his injury pattern considering the low energy involved with this maneuver." He asserted both that Gowdy's injury "would not occur" from the ladder step and also that it would have been "unlikely" to occur from the ladder step. And he commented that "Mr. Gowdy's Charcot ... pre-dated the alleged event," whereas Dr. Clause's records reflected otherwise.
We emphasize that for Jones Act negligence, proximate causation is not required. As long as the employer's negligence "played any part, even the slightest, in producing the injury," liability attaches. Gautreaux , 107 F.3d at 335.
The district court erred in determining that Gowdy's Jones Act negligence claim could not survive summary judgment. Gowdy's simple argument that "[i]t is something anyone can understand; you cannot step off a 48 inch high ladder rung to a metal floor and expect to not get injured" was enough to create a fact issue as to Jones Act negligence, whether or not it ultimately proves convincing.
ii. Unseaworthiness
"Jones Act negligence and unseaworthiness are two separate and distinct claims." Chisholm v. Sabine Towing & Transp. Co., Inc. , 679 F.2d 60, 62 (5th Cir. 1982). For Jones Act negligence, the "[d]efendant must bear responsibility if his negligence played any part, even the slightest, in producing the injury." Id. "The standard of *209 causation for unseaworthiness is a more demanding one and requires proof of proximate cause." Id.
In this case, the district court's opinion asserted that a plaintiff's unseaworthiness claim will fail if his Jones Act negligence claim fails. Because the unseaworthiness causation inquiry differs only in degree, not in kind, from Jones Act causation, see Johnson , 845 F.2d at 1354 (explaining proximate causation as requiring that the unseaworthy condition "played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness"), we reverse summary judgment on Gowdy's unseaworthiness claim as well.
CONCLUSION
Because the district court properly handled Shaffer's motion to withdraw, we AFFIRM that ruling. We REVERSE and REMAND for further proceedings on Gowdy's negligence and unseaworthiness claims.

Gowdy's argument that MSRC committed fraud on the district court by failing to tell Dr. Bain about the 48-inch distance between the ladder rung and the floor is without merit. Dr. Bain testified that he examined photos from the accident scene, which, Gowdy concedes, displayed the 48-inch space. Aside from Gowdy's bald assertions, there is no evidence suggesting that MSRC withheld or falsified information when communicating with Dr. Bain.

MSRC cites Johnson v. Horizon Offshore Contractors, Inc ., No. CIV.A. 06-10689, 2008 WL 916256, at *4 (E.D. La. Mar. 31, 2008) (quoting Mayhew v. Bell S.S. Co ., 917 F.2d 961 (6th Cir. 1990) ) for the proposition that "a medical expert must be able to articulate that there is more than a mere possibility that a causal relationship exists between the defendant's negligence and the injury for which the plaintiff seeks damages." MSRC has misapplied that quote. In Mayhew , a Jones Act plaintiff appealed his favorable jury verdict, claiming inadequate damages. 917 F.2d at 962. Specifically, Mayhew argued that the district court erred in excluding portions of his treating physician's testimony that the district court had deemed speculative. Id. Affirming, the Sixth Circuit held, "Although a Jones Act plaintiff need not present medical evidence that the defendant's negligence was the proximate cause of the injury, we believe that a medical expert must be able to articulate that there is more than a mere possibility that a causal relationship exists between the defendant's negligence and the injury for which the plaintiff seeks damages."Id. at 963. The Sixth Circuit assumed the existence of a medical expert and explained how that medical expert could testify; the court did not have occasion to opine on what should happen if a plaintiff has no medical expert.

This was a FELA case but, as mentioned above, Jones Act cases follow cases under the FELA. Brown , 410 F.3d at 178.